Barbara A. GILLES, Appellee,

v.

NORMAN PLUMBING SUPPLY COMPANY
OF OKLAHOMA CITY, INC., Appellant.

No. 47610.

Court of Appeals of Oklahoma,
Division No. 2.

Oct. 21, 1975.

Rehearing Denied Nov. 14, 1975.

Certiorari Denied May 18, 1976.

Released for Publication by Order of Court of
Appeals May 20, 1976.

Richard D. Hampton, Oklahoma City,
for appellee.

Eagleton, Nicholson & Pate, Oklahoma
City, for appellant.

BACON, Judge.

Appellee contended appellant wrongfully
levied execution on and sold an automobile
belonging to appellee. The case was tried

to a jury which agreed with appellee. Appellant now appeals urging the execution and sale were lawful.

The facts that brought about this lawsuit are as follows: Appellee's husband was a plumber who became individually indebted to appellant plumbing supply company. Appellant sued and obtained judgment against appellee's husband. Appellee's husband never paid nor superseded the judgment and appellant levied execution on the husband's truck and a 1967 Pontiac.

Appellant's execution on the two vehicles was levied in the family driveway in the presence of neighbors. Appellee said two wreckers, a police car, a sheriff's car and two attorneys pulled up to appellee's house; the vehicles were towed away for sale, leaving appellee and her children not only emotionally upset and crying but without transportation. The vehicles were then sold by the sheriff, and a relative of appellee's husband bought both vehicles and immediately sold them back to appellee and her husband. Thus appellee had her car back within a short time, except the car was no longer subject to a security agreement. The judgment creditor had paid off the secured party from the proceeds of the sheriff's sale.

The title to the truck was in appellee's husband's name. The title to the 1967

Pontiac, however, was in the name of "Milton or Barbara Gilles."

Appellee then filed suit against appellant for damages for public ridicule, humiliation, injury to character, mental suffering and wrongful levy, execution and sale of the Pontiac. Appellee also asked for punitive damages. The basis for appellee's claim is that the Pontiac was at least partly hers and the car was sold. Therefore, says appellee, the levy, execution and sale of her interest in the Pontiac was wrongful.

The case was tried to a jury which resulted in a verdict of $907.50 actual damages. The trial court ordered remittitur of $184.33 which represents one-half the amount paid the party holding a security interest in the Pontiac. Thus the award to appellee was $723.17. Appellant now appeals arguing under three propositions of error.

In his first proposition, appellant argues, "Husband and wife may hold personal property in joint tenancy even though there is no written instrument which is conclusive" and cites the case of *Clift v. Grooms,* Okl., 331 P.2d 382 (1958) in support thereof.

In his second proposition appellant urges that under 60 O.S.1971 § 74 [1] a husband

1. 60 O.S.1971 § 74 reads:
"A joint interest is one owned by several persons in either real or personal property in equal shares, being a joint title created by a single instrument, will or transfer when expressly declared in the instrument, will or transfer to be a joint tenancy, or as between husband and wife a tenancy by entirety or joint tenancy as the grantor may elect, or when granting or devising to executors or trustees as joint tenants. A tenancy by entirety can only be created between husband and wife.
"Such joint tenancy or tenancy by entirety may be created by transfer to persons as joint tenants or tenants by entirety from an owner or a joint owner to himself and one or more persons, or from tenants in common to themselves, or by coparceners in voluntary partition, and such estates may be created by or for persons who have elected to become bound under any community property act

now in existence or which may hereafter be enacted. An adjudication of incompetency shall not operate to terminate such an estate. "Where a deed, transfer or conveyance grants an estate in joint tenancy or tenancy by entirety in the granting clause thereof, the granting clause shall control over the habendum clause containing language inconsistent to the granting clause.
"In the event of the death of a joint tenant or tenant by entirety, leaving estate subject to probate, a certified copy of Letters Testamentary or of Administration shall constitute prima facie evidence of such death.
"The provisions of this act shall apply to all estates in joint tenancy or tenancy by entirety in either real or personal property heretofore or hereafter created.
"Nothing herein contained shall prevent execution, levy and sale of the interest of the Judgment debtor in such estates and such sale shall constitute a severance."

and wife can hold personalty in joint tenancy which is subject to levy, execution and sale.

Appellee, on the other hand, argues that how she and Milton owned the Pontiac is immaterial, and that it was a wrongful act to sell the automobile because appellee had an interest in it. We disagree with appellee's conclusion that it is immaterial how the Pontiac was owned. If the ownership was a tenancy in common, then clearly appellant could not sell any interest of the cotenant who was not a judgment debtor. However, if the ownership was a joint tenancy, a different situation exists. The following will point out that who owned what interest in the vehicle is not only material but controls the disposition of this case.

The testimony of appellee and her husband is self-serving in addition to being conflicting as to who owns what interest in the Pontiac. At one point appellee's husband testified "[he] and the bank" owned the car and later he testified the car belonged to appellee. Appellee's testimony is also conflicting. At one point she testified the car was hers and at another point she testified she was a "part owner" of the vehicle with her husband, saying, "there is a partnership on it." There is no testimony as to what appellee's "part" amounts to. There is evidence appellee's husband bought the vehicle and deposited moneys monthly for appellee to make the car payments to the party holding the security interest in the vehicle. It cannot be determined from the testimony what interest if any appellee owned in the Pontiac. In the absence of such proof there could be no recovery for wrongful levy, execution and sale of the Pontiac by appellant.

Assuming, however, that appellee did own some interest in the vehicle and further assuming the title correctly reflects the ownership, she still has no right of recovery under the facts. Here title was held as "Milton *or* Barbara" as distinguished from "Milton *and* Barbara." In the latter case, each would prima facie own an undivided interest in the vehicle as tenants in common and each could sell, convey or dispose of only his interest without affecting the other tenant's interest. On the other hand, holding title as they did in the name of "Milton *or* Barbara" implied that each owned all of it and could sell, convey or dispose of the chattel without the other tenant joining.[2] This "or" ownership has the same legal attributes of a checking or savings account held in the name of "Milton *or* Barbara," where clearly one owner alone could transfer the entire balance.

We see no difference between a forced sale and a voluntary transfer in the present case. In either situation the sale would divest the interest of the nonjoining joint tenant. In this case, the interest divested would be appellee's interest. We conclude when execution was levied upon the Pontiac the sheriff's sale operated to extinguish appellee's interest. For these reasons we hold the admitted facts provide no basis for finding there was a wrongful taking of appellee's interest.

The judgment of the trial court is therefore reversed and the cause is remanded with directions for the trial court to enter judgment for appellant. Because the foregoing is dispositive of the case, no need exists for discussion of appellant's other proposition.

Reversed and remanded with directions.

BRIGHTMIRE, J., concurs.

2. Normally where property is owned in joint tenancy such as "A and B" as joint tenants, a transfer by one joint tenant of his interest creates a tenancy in common between the transferee and the non-adjoining joint tenant. But where the joint tenancy ownership is "A or B" either joint tenant can transfer the entire ownership and the transferee takes full ownership to the exclusion of the nonjoining joint tenant.