925 P.2d 77 (1995)
STATE of Oklahoma, ex rel., DEPARTMENT OF HUMAN SERVICES, on Behalf of Lori Ann SNELLINGS, Appellee,
v.
Bobby Gene STROHMEYER, Appellant.
No. 83928.
Court of Appeals of Oklahoma, Division No. 1.
December 19, 1995.
Certiorari Denied September 10, 1996.
Michael L. Gardner, Joe Farnan, Law Offices of Joe Farnan, Purcell, for Appellant.
Jan Meadows, Assistant District Attorney, Norman, for Appellee.
Released for Publication by Order of the Court of Appeals of Oklahoma, Division No. 1.

*78 MEMORANDUM OPINION

JOPLIN, Judge:
Appellant Bobby Gene Strohmeyer (Father) seeks review of the trial court's order determining Father's paternity of the minor child, C.S., and ordering Father to pay child support in an action on behalf of Lori Ann Snellings (Mother), biological mother of C.S., by and through Appellee, the State of Oklahoma, ex rel. the Department of Human Services (State). In this appeal, Father complains that the trial court erred in allowing evidence to rebut presumption of legitimacy of C.S., born during Mother's marriage to John Snellings (Husband); that State failed to overcome the presumption of legitimacy; that the trial court erred in failing to require Husband, as presumptive father, to take a blood test; and that the trial court erred in computing child support. We find no error by the trial court as alleged, and affirm.
Mother had a relationship with Father in 1983 which continued until Mother became pregnant with C.S. Mother then married Husband in December of 1983. Mother and Husband divorced in June of 1992, just prior to the seventh birthday of C.S.
In February 1993, State on behalf of Mother commenced the present action to establish paternity and obtain support for the minor child of Mother and Father.[1] The trial court, after hearing testimony and reviewing blood test evidence, found the presumption that Husband was the father of C.S. overcome, that Father was the biological parent of C.S., and ordered Father to pay child support including arrearage. Father appeals.
We first recognize a patent conflict in the sections of Title 10 here at issue. That is, 10 O.S. § 1.2 provides that "all children born within the State of Oklahoma shall be legitimate." While 10 O.S. § 1 provides that "all children born in wedlock are presumed to be legitimate," reading § 1.2 in isolation renders the § 1 presumption of legitimacy a nullity, and causes the following sections relating to overcoming the presumption of legitimacy without legal force and effect. Reading the provisions in harmony as we must, and giving effect to the obvious intent underlying § 1.1 to remove the socially stigmatizing terms of "illegitimacy" and "bastard" from the legal lexicon,[2] we believe these provisions establish that children born during the marriage of husband and wife are presumed to be the offspring of that union. Cf., In re Marriott's Estate, 515 P.2d 571 (Okla.1973).
*79 We therefore hold that a child born to wife during wife's marriage to husband is presumed to be the offspring of the husband and wife. 10 O.S.1991 § 1. This presumption may be disputed by the husband or wife or the descendent of one or both and overcome on evidence demonstrating the husband is not the biological father of the child. 10 O.S. §§ 3,[3] 505.[4] To that end, in any civil action in which paternity is a relevant fact, any party (mother, child, alleged father) may agree or be ordered to submit to blood tests. 10 O.S. § 501.[5]
However, the presumption may not be challenged when a child, "born during the course of the marriage ... is reared by the husband and wife as a member of their family without disputing the child's legitimacy for a period of at least two years." 10 O.S. § 3. Nevertheless, § 3 does not automatically bar a claim alleging a child was born out of wedlock merely because that child has reached two years of age: "A trial court must take evidence of all the elements of § 3 before barring such a suit on the basis of this limitation." Villegas v. Villegas, 859 P.2d 1138, 1140 (Okla.App.1993).
In the present case, Mother adduced evidence that Husband, family, co-workers, friends, and Father all knew either prior to the birth of C.S. or within two years thereafter that C.S. was not the biological child of Husband. Father submitted to blood tests, the results of which established a 99.46% probability of paternity. Further, the divorce decree of Mother and Husband entered in 1992 contained both a recitation that C.S. was not the biological child of Husband, and a stipulation that Husband had disputed his paternity of C.S. since the child's birth.
On these facts, the trial court at least implicitly concluded that Husband and Mother had timely disputed paternity under § 3 as to permit introduction of evidence on the issue of Father's paternity, and under the specific facts and circumstances of this case, we cannot say the trial court abused its discretion in allowing admission of the blood test evidence. The blood test evidence conclusively established Father's paternity as to overcome the § 1 presumption, and, on that basis, we hold the order of the trial court establishing Father's paternity of C.S. should be affirmed.
Father also challenges the trial court's computation of child support, arguing error by the trial court in imputing minimum wage to Mother. In this regard, Oklahoma law mandates that "all child support shall be computed as a percentage of the combined gross income of both parents." 43 O.S.1991 § 118(1). In computing gross income of parents:
[T]the court shall include for each parent, either actual monthly income, the average of the gross monthly income for the time actually employed during the previous three (3) years, or the minimum wage paid for a forty-hour week, which ever is most equitable. If equitable, the court may instead impute as gross monthly income for either parent the amount a person with comparable education, training and experience could reasonably be expect to earn. *80 43 O.S. § 118(4). Further, in determining a parent's child support obligation, the trial court may take into consideration the reasonable support obligations of the payee parent as to natural children in that parent's custody. 43 O.S. § 118(1). However, the trial court may deviate from the child support guidelines [only] if the support amount is "unjust, inequitable, unreasonable or inappropriate under the circumstances." 43 O.S. 1991 § 118(19).
In such a case of equitable cognizance, this court will search the entire record, but we will not disturb the trial court's computation of child support absent a showing that the amount so computed is clearly against the weight of the evidence. Manzanares v. Manzanares, 769 P.2d 156 (Okla. 1969) (citation omitted). In the present case, the trial court heard evidence of Father's income; that Mother was receiving AFDC benefits, including day care; that Mother was unemployed in order to attend school; and that Father was married and supporting two children born of that marriage. The trial court imputed to Mother minimum wage income notwithstanding her unemployment.[6] Under these specific facts and circumstances, we cannot say the trial court's computation of child support is clearly against the weight of the evidence. Accordingly, we reject this proposition.
The order of the trial court establishing paternity and ordering Father to pay child support and arrearage is therefore AFFIRMED.
GARRETT, C.J., dissents:
I would hold that 10 O.S.1991 § 3 applies to this child. Since Mr. Snelling did not dispute the child's legitimacy within two years as required by § 3, the legitimacy of the child may not be challenged.
JONES, P.J., concurs.
NOTES
[1] Mother received Aid to Families with Dependent Children while she attended school, and State sought only child support arrearage for the time period in which Mother received AFDC.
[2] Section 1.1 provides:

Where ever reference is made in the Oklahoma Statutes to "illegitimate" or "bastard" it shall be deemed to refer to a "child born out of wedlock."
[3] Section 3 provides:

The presumption of legitimacy can be disputed only by the husband or wife or the descendant of one or both of them. Illegitimacy in such a case may be proved like any other fact. Provided that if the child is born during the course of the marriage and is reared by the husband and wife as a member of their family without disputing the child's legitimacy for a period of at least two (2) years, the presumption cannot be disputed by anyone.
[4] Section 505 provides:

The presumption of legitimacy of a child born during wedlock is overcome if the court finds that the conclusions of all the experts as disclosed by the evidence based upon the tests, show that the husband is not the father of the child.
[5] Section 501 provides:

In a civil action or actions in the nature of a civil proceedings in which paternity is a relevant fact, the court, upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall, order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require.
[6] AFDC payments are specifically excluded from computation of income pursuant to 43 O.S.1991 § 118(2).