1998 OK CIV APP 53

**Andrea Jo ANDERSEN, Plaintiff/Appellee,**

v.

**Thomas R. FELLERS, Defendant/Appellant.**

No. 87823.

Court of Civil Appeals of Oklahoma, Division No. 3.

March 10, 1998.

Barbara Ann Bartlett, Tulsa, for Plaintiff/Appellee.

Shannon Davis, Tulsa, for Defendant/Appellant.

BUETTNER, Presiding Judge:

¶ 1  Appellant Thomas R. Fellers (Fellers) appeals from the trial court's award of child support to Appellee Andrea Andersen (Andersen).  Andersen filed a petition for divorce, alleging a common law marriage existed between the parties.  On the day of trial, she conceded that no marriage existed between the parties.  The trial therefore was held to determine paternity and establish child support.  Because we find the trial court's decision was not against the clear weight of the evidence, we affirm.

¶ 2  Fellers opened his own business, Fellers Auto Specialists in June 1992.  Fellers and Andersen began living together in February 1993.  Their first child, a son, was born December 25, 1993.  Andersen moved out of Fellers home at the end of January 1994.  The parties reconciled and lived together in April and May 1994.  Andersen filed a petition for divorce, alleging the existence of a common law marriage, on July 27, 1994.  A temporary child support order was entered in November 1994, in which Fellers was ordered to pay $527.87 per month child support as well as 85% of the medical and child care expenses of the child. The parties' second child, a daughter, was born in January 1995.  The trial court modified the temporary child support order on March 30, 1995, to provide for support of both children.  In that order the child support was increased to $803.90 per month, along with 85% of the medical and child care expenses.

¶ 3  Trial was held February 28—March 1, 1996.  The trial court ruled that there was no marriage between the parties, but that

the two children were born of the relationship and that Fellers is the father of the two children. The trial court found that Fellers' income had inexplicably dropped dramatically after the temporary support order was entered and therefore imputed to Fellers the income he made before that drop. The trial court imputed $5,284/month income to Fellers. The trial court found that the total income of the parties was $6,389, which, according to the child support guidelines, resulted in $962 per month base child support. Fellers was held responsible for 83% child support while Andersen was responsible for 18%.

¶ 4 The trial court further found that Fellers owed back child support for the first child for 8 months during 1994 when the parties were not living together, plus 2 months back child support for the second child, amounting to $4,769.80. The trial court further found that Fellers owed $1,298.21 for child support and child care amounts that were not covered by a wage assignment. The court entered a qualified medical child support order, as well as a wage assignment for the amount due. The trial court found Fellers to be in contempt for failure to pay child support under the temporary order. The court awarded Andersen $1500 as "property division" for her interest in a Cadillac that had been titled in the names of both parties but had been sold by Fellers.

■ ¶ 5 Fellers' first and second assignments of error are that the trial court erred in imputing monthly income of $5283.26 ($4,281.82 salary, $948.44 rental income, and $53 insurance benefits) to Fellers and that the court failed to follow the child support guidelines in determining gross income. Fellers argues that when he first opened his business, he worked 90 hours a week and that his income decreased when he began working 40 hours per week. The trial court found that Fellers had intentionally reduced his income in order to avoid paying the amount of child support ordered in the temporary order. Fellers insists that the trial court has forced him to work 90 hours a week in order to meet his child support obligation.

¶ 6 Andersen introduced as Plaintiff's exhibit 10 a document prepared by Fellers before the temporary support hearing. In that document, Fellers listed his net income from rental income and wages, after taxes, as $5460. In 1994, Fellers' business paid him $24,000 in rent on the building in which the business operates. Andersen submitted an exhibit which indicated that in 1993, Fellers' average monthly wages were $2184.68, in 1994 his average monthly wages were $4841.67, and then in 1995, Fellers' average monthly wages dropped to $1450. The evidence also established that Fellers had a bank account with a balance between $5,000 and $9,000 which he closed in February 1995.

¶ 7 Andersen alleged, and the trial court agreed, that Fellers began paying himself significantly less just after the order for temporary support was entered in November 1994. Fellers' 1995 W–2 form indicates that Fellers' wages were $18,012.13, while Fellers paid one of his employees $38,576.30 in 1995. Andersen testified that while she worked for Fellers, none of the employees were paid as much as Fellers paid himself. The balance sheets for Fellers' business indicate the business had net incomes of $23,953.13 in 1992; $64,117.17 in 1993; $6,606.24 in 1994; and $8,258.41 in 1995. Fellers' 1993 Individual Tax Return shows his adjusted gross income that year was $63,329, which would average $5277 per month. Fellers' 1994 tax return shows an adjusted gross income of $53,857, which would average $4488 per month. Fellers' 1995 tax return shows an adjusted gross income of $17,455, which would average $1454 per month.

¶ 8 We find the evidence supports the trial court's determination that Fellers intentionally decreased his income simply to decrease his child support obligation. All child support is computed as a percentage of the combined gross income of the parents. 43 O.S.1991 § 118(1). Section 118(3) provides:

For income from self-employment, rent, royalties, proprietorship of a business, or joint ownership of a partnership or closely held corporation, gross income is defined as gross receipts minus ordinary and necessary expenses required for self-employment or business operation. Specifically

excluded from ordinary and necessary expenses for purposes of this section are amounts determined by the court to be inappropriate for determining gross income for purposes of calculating child support. The court shall carefully review income and expenses from self-employment or operation of a business to determine an appropriate level of gross income available to the parent to satisfy a child support obligation. A determination of business income for tax purposes shall not control for purposes of determining a child support obligation.

The court explained, in announcing its decision March 14, 1996, that it could not see any reason for the dramatic drop in Fellers' income, other than an intentional attempt to avoid paying child support. The court noted that it did not find persuasive Fellers' argument that he would have to work 90 hours per week to earn the amount of money he had earned in 1994. We agree. Taking the figures cited above regarding Fellers' monthly income in 1994 and 1995, Fellers' hourly wage, even working 90 hours per week, was around $13 in 1994 and his hourly wage for 50 hours dropped to $7.25. We find therefore that, if Fellers had continued to pay himself the same wage, for fewer hours, his income still would have been about $2600 per month, rather than $1450. Added to that number is the $2000 per month in rent Fellers' business had paid him in 1994.

■ ¶ 9 We may only reverse the trial court's computation of child support if it is clearly against the weight of the evidence. *State ex rel. Dept. of Human Services v. Strohmeyer*, 1995 OK CIV APP 157, 925 P.2d 77. We find the trial court's determination is supported by the evidence and is in accord with the child support guidelines.

■ ¶ 10 Fellers next alleges that the trial court erred in setting child support retroactively. In actions to determine paternity, child support may be awarded for up to five years preceding the action. 10 O.S.1991 § 83(C)(1). In announcing its decision, the trial court noted that in determining "pre-order monies owed" the court found that Andersen and the parties' son lived with Fellers during part of 1994. The court noted

it was difficult to determine when the parties lived together, but that it would be inequitable to award child support for when the child was living in Fellers' home.

¶ 11 The court stated that it determined Fellers owed for 8 months of child support for the son and two months for the daughter for "pre-order" child support. The total amount of this was $4,769.80. Fellers argues that Andersen and the parties' son lived with him for five months in 1994 and that the temporary order was entered November 1, 1994, so that he should only have been required to pay back child support for the son for four months. Although Andersen did testify that she lived with Fellers "four or five months" in 1994 (3/1/96 tr. 35), she also testified that she left Fellers at the end of January 1994, when the son was about one month old, returned in April and May of 1994, then left Fellers for good. Assuming then, that Fellers supported Andersen and their son for three months out of 1994 and that a child support order was in effect for November and December 1994, the trial court should have awarded back support for the son for seven months during 1994. Fellers, however, failed to object to the trial court's determination that Andersen had not lived with Fellers for eight months between the birth of the son and the entry of the temporary support order. In addition, Fellers has failed to provide authority that the trial court's decision is reversible error. We agree with the trial court that it was difficult to determine when the parties lived together. The trial court may have included a month for the partial months of January, April, and May when Andersen left Fellers, returned to him and then left again. We therefore do not find the trial court's decision to award back child support for the son for eight months is error.

■ ¶ 12 Fellers next alleges that the trial court erred in ordering him to pay medical expenses of the children. Andersen's exhibit 8 lists $520.07 as 85% of medical expenses incurred by the children. Fellers asserts that he and Andersen both testified that he paid $5000 to cover the expenses of the birth of their son. Fellers reasons that this amount should be offset against the med-

ical expenses listed in exhibit 8. Fellers offers no authority for this position. When the parties' son was born, Fellers and Andersen were living together. We do not see the relevance of expenses paid while the parties were living together to the calculation of the portion of medical expenses Fellers owes for expenses arising after the parties separated, based on the temporary order that he pay 85% of the children's medical expenses.

■ ¶ 13 Fellers' final argument is that the court erred in dividing the parties' property since this is not a divorce case. The trial court ordered Fellers to pay Andersen $1500 for her interest in a Cadillac that the parties bought while living together. Andersen testified that the Cadillac was titled in both the parties' names, but that Fellers took it from her in order to fix it and then sold it without her knowledge. At the time Andersen testified regarding the Cadillac, Fellers objected based on the fact that the case was no longer a divorce action and that division of property was therefore no longer an issue. Fellers asserted that Andersen would have to bring a claim for conversion of her part of the Cadillac.

¶ 14 The trial court responded that it agreed "to the extent of determining whether things are jointly assets." Nevertheless, the court said it would sort out what is the separate property of the individuals. Fellers did not present evidence rebutting Andersen's testimony that the Cadillac was jointly held. When the trial court announced its decision in a later hearing, Fellers did not object to the award of $1,500 to Andersen for her "equitable interest" in the car.

¶ 15 Fellers asserts that 43 O.S.1991 § 109.2 establishes the limits of jurisdiction in a paternity case and that § 109.2 does not authorize the division of property. However, we find that Andersen properly raised the division of property in her divorce petition. Once the divorce issue became moot, because of the finding that there was no marriage, the court nevertheless had authority to allow amendment of the pleadings to conform to the evidence. Title 12 O.S.1991 § 2015(B) "Amendments to Conform to the Evidence," provides, in part,

When issues not raised by the pleadings or by the pretrial conference order, ... are tried by ... consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings .... Such amendment as may be necessary to cause the pleadings or the pretrial conference order to conform to the evidence and to raise these issues may be made upon motion...; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings or the pretrial conference order, the court may allow the pleadings or the pretrial conference order to be amended and shall do so freely when the presentation on the merits of the action will be served thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.

Whether to allow amendments to the pleadings is left to the trial court's discretion. *Prough v. Edinger, Inc.,* 1993 OK 130, 862 P.2d 71. We find that the trial court properly heard the evidence regarding the parties' interests in the Cadillac and "amended" the pleadings to conform to this evidence. Division of property was an issue raised by the pleadings. The nature of the claim changed when Anderson conceded on the day of trial that no common law marriage existed. However, Fellers did not demonstrate any prejudice in his defending the claim of joint ownership of the Cadillac. The claim of joint ownership could be made without regard to the marriage status of the parties. Allowing the claim to be tried in this proceeding served the interests of justice and saved the parties time and expense. Thus the purposes of § 2015(B) were met.

¶ 16 Fellers did not rebut Andersen's testimony that both names were on the vehicle title, which is a presumption of joint ownership. *Ward v. Ward,* 197 Okla. 551, 172 P.2d 978 (1946); *Gilles v. Norman Plumbing Supply Co. of Okla. City, Inc.,* 1975 OK CIV APP 62, 549 P.2d 1351. In this type of case, where the parties are not in fact married, the court's power to adjust property rights is equitable, and this court may give force to

the agreement of the parties regarding property rights. *Whitney v. Whitney,* 192 Okla. 174, 134 P.2d 357 (1942). We therefore find that the trial court did not abuse its discretion in awarding Andersen $1,500 for her part of the Cadillac.

AFFIRMED.

ADAMS, J., concurs.

HANSEN, Judge, concurring in part, dissenting in part:

I dissent to that portion of the opinion that divides the property. In my opinion, this is improper where the action is no longer an action for divorce but rather is an action to determine paternity.