1999 OK 68

**STATE of Oklahoma, ex rel. DEPARTMENT OF HUMAN SERVICES, ex rel. Jennifer JONES now Decker, Appellee,**

v.

**Bryce A. BAGGETT, Jr., Appellant.**

**No. 88,015.**

Supreme Court of Oklahoma.

July 13, 1999.

As Corrected Jan. 3, 2000.

Kent Whinery, Assistant District Attorney, Sayre, Oklahoma for Appellee.

Bryce A. Baggett, Oklahoma City, Oklahoma for Appellant.

LAVENDER, J.

¶ 1 On certiorari, the following questions must be answered:

(1) Did the trial court err in entering a judgment ordering appellant, Bryce A. Baggett, Jr.—father of child—to reimburse appellee, the Oklahoma Department of Human Services (DHS), for monies allegedly paid to mother for the support of child under the Aid to Families with Dependent Children (AFDC) program, without being presented evidence to show the amount of AFDC payments to mother?

(2) Was the trial court required, by the dictates of Oklahoma's child support statutes, to use zero for father's gross monthly income for the purpose of figuring his continuing/future child support obligation because father had no assets, and lacked a present income or real earning capacity due to his incarceration as a prison inmate, or, instead, was it proper for the trial court

to attribute to him a gross monthly income for child support purposes based on the minimum wage for a 40 hour work-week?

(3) Was sufficient evidence presented to the trial court to sustain a judgment setting father's continuing/future child support obligation at $109 per month?

¶ 2 We hold: (1) the trial court erred in entering a judgment for AFDC reimbursement without being presented evidence to show the amount of AFDC payments to mother; (2) our child support statutes did not require the trial court to use zero for father's gross monthly income for the purpose of figuring his continuing/future child support obligation — instead, it was proper to attribute to him a gross monthly income based on the minimum wage for a 40 hour work-week; and (3) because under our child support statutes the non-custodial parent's support obligation is based on a formula using the combined gross monthly income of both parents and no evidence was presented to the trial court concerning mother's gross monthly income, there was insufficient evidence presented to the trial court to set father's support obligation at $109 per month.

## PART I. STANDARD OF REVIEW.

 ¶ 3 Child support proceedings are matters of equitable cognizance. *Thrash v. Thrash*, 1991 OK 32, 809 P.2d 665, 668. On appeal, an appellate court reviews the entire record, weighs the evidence and will affirm a trial court's judgment relating to child support where it is just and equitable. *Id.* Further, the amount of child support set by a trial court will not be modified or set aside on appeal unless the award is clearly against the weight of the evidence or is somehow unjust and inequitable. *Lockhart v. Lockhart*, 1996 OK CIV APP 56, 919 P.2d 454, 456.

 ¶ 4 As to legal issues—e.g. the meaning and intent of legislative enactments—a different standard of review applies. Legal questions are reviewed *de novo* and an appellate court has plenary, independent, and non-deferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C., v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100, 1103 fn. 1.

## PART II. FACTS AND PROCEDURAL HISTORY.[1]

¶ 5 In its trial court petition, DHS alleged the State of Oklahoma had furnished appellant's minor child—a daughter—necessary support under the AFDC program entitling it to judgment against him for $3,161 expended from May 1991 through June 1995, plus amounts accruing to the date of judgment. The petition also requested judgment for continuing—i.e. future—child support in the amount of $109 per month. The factual matters of the petition were verified by the child's mother.

¶ 6 Although not formerly admitted at any in-court proceeding, the trial court record contains an affidavit from mother—**filed in the case after the petition, but prior to rendition of the judgment here under review**—where she acknowledged that, even though she verified the amount requested in DHS's petition for AFDC reimbursement, in actuality, she did **not** know whether the amount specified was true and correct.[2] In

---

1. Only matters necessary for proper disposition and facilitation of an understanding of the factual and procedural background of the case are set forth in the text. We note here, however, in addition to the AFDC reimbursement award and setting the future child support obligation, the trial court judgment determined appellant's paternity of the child involved, and the Court of Civil Appeals (COCA) affirmed the judgment in all respects. Although in the trial court and the COCA appellant raised questions concerning the appropriateness of the basis upon which the case was initiated against him, particularly insofar as it sought a judicial paternity determination, on certiorari such issues are not re-urged and he does not challenge the paternity determination.

Thus, any issue(s) previously raised concerning the paternity determination or the appropriateness of the manner by which DHS initiated the case against him, are no longer live issues at this stage of the litigation. On certiorari, error is alleged only in relation to the AFDC reimbursement award and the setting of his child support obligation. **We finally note, both appellant' s trial court and appellate submissions make it clear he concedes he is the child' s father.**

2. Mother's affidavit was an attachment to appellant's motion for summary judgment filed in the trial court in May 1996. The motion was denied by the trial court.

such regard, the affidavit reflects her verification was based on what someone from DHS told her was the correct amount. The affidavit also attests that she and appellant were never married, they lived together for two years before their daughter's birth and for eight months thereafter—until May 10, 1991, apparently the date appellant began his imprisonment.

¶ 7 Appellant, by a second amended answer, admitted the child was his daughter, that he publicly acknowledged her as such since her birth in August 1990, and he admitted the mother's identity. The second amended answer, however, denied the paragraph of DHS's petition that alleged the State had provided support under the AFDC program, demanded strict proof thereof and denied the State was entitled to judgment against him in any amount.[3]

¶ 8 The trial court record provided to us contains two transcripts of in-court proceedings before the trial judge: the first held in May 1996, the second in June 1996. At the first, in addition to overruling certain motions presented by appellant's counsel, the trial court decided appellant was the father, i.e. determined his paternity. The trial court also orally set temporary child support at $109 per month to begin May 3, 1996 and stated the basis upon which he arrived at the $109 figure. He expressly stated he was attributing to both parents the minimum wage and using the child support guidelines. This amount was set although no evidence or

stipulations were submitted concerning the gross monthly incomes of either appellant or mother. The transcript of the May in-court proceeding also shows the trial court was verbally informed by DHS's counsel that the AFDC case had closed in December 1995, i.e. apparently that mother was no longer receiving AFDC payments. The May 1996 proceeding concluded with the trial court informing counsel the matter was set for final determination of child support on June 6, 1996.

¶ 9 At the June 1996 hearing[4] certain oral stipulations were entered into by the parties' counsel. However, the stipulations did **not** encompass all those material factual matters that had been drawn or put at issue by the parties' pleadings. The stipulations were in essence: (1) appellant, since 1991, has been serving the first of three, thirty (30) year consecutive prison sentences in the Oklahoma prison system and (2) he had no present income or assets which could be used to satisfy any child support obligation. **No other evidence was presented to the trial court at the June 1996 hearing.** In other words, **no evidence** was presented concerning mother's gross monthly income, **nor was any evidence or stipulation(s)** presented concerning the fact or amount of any AFDC payments to mother for the benefit of child. The subjects of the mother's gross income and the AFDC payments were not mentioned at the June 1996 in-court proceeding. The June hearing concluded with the trial court

---

3. The second amended answer also raised as an affirmative defense that: in June 1995 appellant and mother had entered into an accord and satisfaction whereby any of her claims to child support were satisfied and discharged. Apparently, the contention was that the accord and satisfaction involved appellant's transfer of a vehicle worth $10,000 to mother sometime in 1995, which she sold for $6500. His assertion in regard to an accord and satisfaction is now apparently that it only related to accrued child support. See February 9, 1998 Petition for Writ of Certiorari of Appellant, pg. 3 and March 17, 1997 Brief of Appellant, pg. 8. In that we are reversing the trial court judgment in regard to AFDC reimbursement and the setting of appellant's monthly child support obligation on other grounds—and remanding for further proceedings—it is unnecessary to delve into the merits of the accord and satisfaction defense. Therefore, we express no view as to the effect, if any, the alleged vehicle transfer has on his liability for

past/accrued or his continuing/future child support obligation. Those are matters which should be taken up in the first instance by the trial court upon proper presentation by the parties when this matter returns to the trial court on remand. However, we do note this Court has generally held that public policy prohibits a parent's contracting away a child's right to support, an agreement attempting to permanently deprive a child of support is void as against public policy and such a contract does not prevent DHS from bringing a paternity action and establishing support obligations. *State Department of Human Services v. T.D. G.*, 1993 OK 126, 861 P.2d 990.

4. The June hearing was held on the 17 th, rather that the 6 th, counsel for both parties and the trial judge apparently having agreed to move the matter from the 6 th to the 17 th. See Transcript, June 17, 1996, pg. 6, lines 13–18.

informing counsel he would set the amount of child support after reviewing some case law on what support ought to be for a person in appellant's situation, i.e. one who is an incarcerated prison inmate, with no assets or present income.

¶ 10 In July 1996 the judgment was entered. It reiterated the trial judge's earlier oral paternity determination and temporary support order made at the May in-court proceeding; established the $109 per month child support obligation to begin August 1, 1996; and found appellant liable for past due support (i.e. AFDC reimbursement) in the amount of $3,815—to be paid at a rate of $105 per month beginning August 1, 1996. The judgment also set out the judge's view of the impact incarceration had on appellant's child support responsibilities, as follows:

> The court is aware that [appellant] has been sentenced to a lengthy prison term. The court has considered two issue[s] that relate to [appellant's] incarceration.
>
> First, as to the issue of arrearage, the court can find no authority that would relieve [appellant] of his obligation to reimburse [the] state for AFDC expended.
>
> Second, as to the issue of what child support ought to be while appellant is in prison, it is the court's opinion that [appellant's] incarceration is his own fault. It would not be equitable to allow [appellant] to be excused from his obligation because of his incarceration. To find that [appellant] did not have to pay child support because he was in prison would be to conclude that he is entitled to have taxpayers support his children because of his criminal acts.

¶ 11 Appellant appealed, challenging both the AFDC reimbursement award and the $109 per month support obligation. The former was attacked on the basis it was entered without the presentation of any evidence to substantiate the amount of AFDC payments allegedly made to mother; the latter as lacking conformity to our child support laws and also suffering from evidentiary deficiency. The COCA affirmed in all respects. Appellant sought certiorari, which we previously granted.

## PART III. THE AFDC REIMBURSEMENT AWARD CANNOT STAND BECAUSE IT WAS ENTERED WITHOUT THE PRESENTATION OF ANY EVIDENCE TO SUBSTANTIATE THE AWARD.

¶ 12 Before a judge may validly decide an issue of fact, his decision, like that of a jury, must be based on competent evidence received during a hearing, or on facts stipulated by the parties. *Smith v. Smith,* 1992 OK CIV APP 121, 839 P.2d 685, 688; *See also Nelson v. Garrett,* 201 Okla. 9, 200 P.2d 420, 424 (1948)(in the absence of a trial of fact issues drawn between parties to litigation it is improper for a trial court to render a judgment for or against either party upon such issues). Appellant's second amended answer constituted a denial of DHS's entitlement to an award for AFDC reimbursement in any amount and nowhere in the trial court record that we have been provided does he admit or stipulate to the amount of AFDC payments to mother. Thus, the amount of AFDC payments to mother was plainly a fact question drawn or at issue between the parties, and it was a matter that had to be proved like any other material fact which would lead to the recovery of a monetary judgment. *See Knox v. Champlin Refining Co.,* 172 Okla. 396, 45 P.2d 119 *Second Syllabus* (1935)(if there is no competent evidence reasonably tending to support judgment it must be reversed—law action).[5]

---

5. Although recognizing appellant challenged both the AFDC reimbursement award and the $109 per month support obligation, the COCA basically decided the challenge to the former was waived because not adequately raised in his appellate briefs. In our view, although appellant's brief in chief and reply brief do not contain supporting legal authority in relation to his AFDC reimbursement award challenge, the claim of error regarding it was expressly raised in his petition in error, it was sufficiently kept alive in his brief in chief and reply brief, and the COCA should not have deemed the challenge waived. The petition in error stated at ¶ 4 of Appellant's Statement of the Issues and Errors in this Appeal: "[The trial court] could not grant a judgment against [appellant] for $3,815 without receiving any evidence whatsoever to support the allegations of the Petition of [DHS]". The claim of error was repeated in his March 1997 Brief of Appellant (pg.23) and in his May 1997 Reply

¶ 13 A review of the record shows **no evidence**—documentary or testimonial— was submitted at the May or June 1996 hearings that would substantiate the trial court judgment of $3,815 for AFDC reimbursement. Further, from an evidentiary standpoint, the record does not reveal where the trial court obtained the $3,815 figure.[6] Obviously, because the judgment for AFDC reimbursement was entered without the trial court conducting a trial or being presented with any evidence in regard thereto, it was improper to enter a judgment against appellant for any sum.

¶ 14 Although it may well be a fact that AFDC payments were made to mother in the amount awarded by the trial court, no evidence or stipulation(s) of the parties contained in this record shows the amount of any such payments. Without such evidence or stipulation(s) the AFDC reimbursement

award cannot stand, it must be reversed and the matter remanded for further proceedings relating to the issue.[7]

**PART IV. THE TRIAL COURT WAS NOT REQUIRED TO USE ZERO FOR APPELLANT'S GROSS MONTHLY INCOME FOR THE PURPOSE OF CALCULATING HIS CHILD SUPPORT OBLIGATION—INSTEAD, IT WAS PROPER TO ATTRIBUTE TO HIM A GROSS MONTHLY INCOME BASED ON THE MINIMUM WAGE FOR A 40 HOUR WORK-WEEK.**

¶ 15 43 O.S. Supp.1995, § 118 and 43 O.S.1991, § 119 contain Oklahoma's Child Support Guidelines and are the central statutes controlling the setting of a non-custodial

Brief (pp. 22–23), although, as noted, no supporting legal authority was presented in support of the claim of error. **Both briefs point out, however, with citation to the record, that his second amended answer had explicitly controverted DHS's entitlement to a monetary judgment award** in such regard. Normally, assignments of error presented in appellate brief(s) unsupported by authority will not be noticed by an appellate court and will be treated as waived. *Peters v. Golden Oil Co.*, 1979 OK 123, 600 P.2d 330, 331. However, an exception applies when it is apparent an assignment of error, without further research, is well taken. *Id.* In such a situation, an appellate court may rely on the assignment of error to reverse a trial court judgment. Here, the error appellant raised in his petition in error, brief in chief and reply brief, with substantiation by adequate citation to the record—and which he again raises on certiorari—i.e. that the trial court erred by entering a judgment against him for AFDC reimbursement without being presented **any** evidence to confirm the amount of AFDC payments made to mother—is one where it is apparent the claimed error is well taken without the need of any research.

6. Even assuming that under other circumstances it would have been proper for the trial court to rely on mother's verification of the AFDC amount alleged in the petition as having been paid to her from May 1991 through June 1995— i.e. $3,161—the verification here could **not** be relied on because, as her later affidavit explained, she really did not know the amount of AFDC payments made to her. Further, no evidentiary basis exists to support the additional $654 ($3,815–$3,161) awarded by the trial court, although we suspect this additional sum might encompass AFDC payments from August 1995

through December 1995, when the payments apparently ended.

7. Without evidence being submitted at an in-court proceeding to support it and without any opportunity for appellant to confront, cross-examine or challenge **whatever basis** was relied on by the trial court to come up with the figure of $3,815 for AFDC reimbursement, it also appears plain appellant was given no opportunity—consistent with due process—to contest either the fact or amount of any AFDC payments. This Court said twenty (20) years ago in regard to the requirements of due process:

> With the exception of certain matters of which [a] court may take judicial notice, the decision of [a] trial court is limited to the record made before it in open court.
>
> Due process requires an orderly proceeding adapted to the case in which the parties have an opportunity to be heard, and to defend, enforce and protect their rights.....
> * * *
> The right of a litigant to in-court presentation of evidence is essential to due process. Where important decisions turn on questions of fact, due process requires an opportunity, in almost every situation, to confront and cross-examine adverse witnesses. (Footnotes omitted)

*Malone v. Malone*, 1979 OK 21, 591 P.2d 296, 297–298; *See also Harmon v. Harmon*, 1997 OK 91, 943 P.2d 599, 604(where judicial ruling turns on questions of fact and evidence is used to prove certain facts, the evidence must normally be disclosed to a party litigant so that he/she has an opportunity to test the evidence and show it is untrue).

parent's child support obligation.[8] To understand appellant's challenge to the $109 per month child support obligation set by the trial court it is necessary to outline the statutorily delineated method upon which the obligation is based. The Guidelines, in ordinary circumstances, establish the amount of combined monthly support which both parents may be expected to provide for a child based on their combined income [*See Archer v. Archer*, 1991 OK CIV APP 28, 813 P.2d 1059, 1061 (Approved for Publication by Oklahoma Supreme Court)], and ultimately, the support obligation of the non-custodial parent. Generally, the legislative scheme pertaining to child support takes into account both the presumed needs of children and the parents' ability to pay. *Id.* As will be seen, however, for purposes of setting a support obligation, an income may be attributed to either parent under certain circumstances, even though a parent has no actual income. It is this attribution of an income to him that appellant attacks.

¶ 16 As pertinent here, § 118(B)(1) provides that all child support shall be computed as a percentage of the combined gross income of both parents. Once the gross income of both parents is determined § 118(B)(8) provides the gross income of each shall be added together and the Child Support Guideline Schedule contained in § 119 consulted to arrive at the total combined child support.[9] The **total** combined parental child support amounts are set out in table form in § 119 depending on the various combined parental gross incomes, the latter set forth in the table in $50 increments up to a $10,000 combined monthly gross income. When the total combined parental child support is determined using the Guideline

Schedule, § 118(B)(9) requires the percentage share each parent is responsible to provide be figured by computing the percentage contribution of each parent to the combined gross income and allocating that same percentage to the individual parental child support obligation—i.e. the base child support obligation of each parent.[10]

¶ 17 As can be seen, to figure the child support obligation of a non-custodial parent—here appellant—it is necessary for a trial court to determine the gross income of each parent. The Legislature, by § 118(B)(4) has given a trial court certain options to arrive at the gross income of each parent, **including attribution of an income based on the minimum wage**, in the following language:

4. For purposes of computing gross income of the parents, the district ... court shall include for each parent, either the actual monthly income, the average of the gross monthly income for the time actually employed during the previous three (3) years, or the minimum wage paid for a forty-hour week, **whichever is the most equitable**. If equitable, the district ... court may instead impute as gross monthly income for either parent the amount a person with comparable education, training and experience could reasonably expect to earn; provided, however, that if a person is permanently physically or mentally incapacitated, the child support obligation shall be computed on the basis of actual monthly gross income[.] (emphasis added)

¶ 18 Section 118(A) allows deviation from the level of child support set by the Guidelines only in certain limited circumstances. It provides in relevant part:

---

8. The 1995 version of § 118 and the 1991 version of § 119 were in effect when the Oklahoma Department of Human Services (DHS) initiated this matter in September 1995 and when the trial court issued judgment in July 1996. Section 118 has been amended twice by the Legislature recently, but the amendments are not material to our disposition of this certiorari proceeding. See 1997 Okla. Sess. Laws, Ch. 403, § 11 (West 1997); 1998 Okla. Sess. Laws, Ch. 323, § 8 (West 1998). Further, both § 118 and § 119 were the subject of extensive amendment by Senate Bill 689, passed by the 47th Oklahoma Legislature and approved by the Governor on June 10,

1999, but said amendments do not become effective until November 1, 1999.

9. Actually, § 118(B)(8) refers to "**adjusted** gross income"(emphasis added), but appellant does not argue any of the allowed downward adjustments to gross income contained in § 118(B)(2),(3), (5) and (6) apply.

10. In actuality, § 118(B)(9), like § 118(B)(8)(note 9, *supra*), refers to "**adjusted** gross income" (emphasis added).

A. Except in those cases where parties represented by counsel have agreed to a different disposition, there shall be a rebuttable presumption in any judicial ... proceeding for the award of child support, that the amount of the award which would result from the application of the following guidelines is the correct amount of child support to be awarded. **The district ... court may deviate from the level of child support suggested by these guidelines where the amount of support so indicated is unjust, inequitable, unreasonable or inappropriate under the circumstances, or not in the best interests of the child or children involved.....** If the district ... court deviates from the amount of support indicated by these guidelines, it shall make specific findings of fact supporting such action. (emphasis added)

¶ 19 Appellant's main challenge to the $109 monthly support obligation is based on his view that because he has no assets, and currently no income or real earning capacity due to his incarceration, it was error to attribute to him a gross income based on the minimum wage for a 40 hour week. Instead, according to him, the **most equitable** alternative would have been to use zero for his gross income, i.e. either his actual monthly income or an average monthly income over the previous three years. Under §§ 118 and 119 the use of zero for his income would yield zero for his support obligation because his percentage of the combined gross income would also be zero. He also, in essence, relies on § 118(A) to argue it was unjust, inequitable, unreasonable or inappropriate under the circumstances or not in the best interests of his daughter to set any amount as a continuing/future child support obligation due to his lack of income, earning capacity and assets. We disagree.

¶ 20 Initially, it is plain appellant's incarceration cannot be equated with permanent physical or mental incapacity which the Legislature has determined in § 118(B)(4) would mandate use of his actual monthly gross income. Further, neither party argues that imputation of a gross monthly income should have been determined based on what a person with comparable education, training and experience could reasonably expect to earn.[11] Instead, appellant argues that given his incarceration and financial situation, the trial court **was required to** use zero for his gross monthly income which would, as noted above, result in a child support obligation of zero. Instead of using zero, the trial court attributed to him a gross monthly income based on the minimum wage in effect in May–June 1996—$4.25 per hour—which yielded a gross monthly income of $736.67. The trial court also attributed the minimum wage to mother and, thus, decided the combined monthly gross income of both parents was $1473.34. A combined income of $1473.34 yields a combined child support total for both parents of between $217 and $223 per month under the Guideline Schedule table set out in § 119. Each parent's share would be 50% or approximately $109 per month, the amount set by the trial court as appellant's support obligation.[12]

---

11. Thus, we need not and do not rule on when or whether it would be equitable to attribute to an incarcerated prisoner with no assets, income or earning capacity an income greater than the minimum wage for child support purposes.

12. Although appellant argues one cannot tell how the trial court arrived at the $109 figure, he is mistaken. As noted in **PART II, FACTS AND PROCEDURAL HISTORY**, at the May 1996 in-court proceeding the trial court informed the parties' counsel he was attributing to both parents the minimum wage and was using the child support guidelines to set temporary child support at $109 per month. In May–June 1996 the minimum wage was $4.25 per hour by federal statute. 29 U.S.C.A. § 206(a)(1). Appellant's certiorari petition appears to concede the minimum wage at the time the trial court ruled was $4.25 per hour. See February 9, 1998, Petition for Writ of Certiorari of Appellant, pg. 3. Forty hours at $4.25 per hour yields a weekly gross income of $170, a yearly gross income of $8840 ($170 X 52 weeks) and a monthly gross income of $736.67 ($8840 divided by 12) for each parent. Thus, the combined monthly gross income for both parents would be $1473.34, with each parent being responsible for 50% of the child support set out in § 119. When § 119's Guideline Schedule table is consulted, a combined gross monthly income of $1473.34 falls between the specified increments of $1450 and $1500 combined gross monthly income. The total combined child support is $ 217 per month for $1450 and $223 per month for $1500. Obviously, the trial court arrived at the $109 figure, just as he had in setting

¶ 21 As noted in **PART I, STANDARD OF REVIEW,** *supra,* child support determinations fall under a court's equitable cognizance. Further, a plain reading of § 118(B)(4) shows the Legislature has **expressly** mandated that equitable principles be used by a trial court when deciding on the monthly income figure relevant to determining the appropriate amount of child support. In that neither §§ 118 or 119, or any other statute we have found, expressly tells us how to treat the situation of an incarcerated parent like appellant, we must, then, be guided by equitable considerations. When equitable considerations are applied it is our view it was proper for the trial court to attribute to appellant a gross monthly income based on the minimum wage for a 40 hour week—i.e. to decide such attribution was the most equitable of the alternatives specified in § 118(B)(4).[13]

¶ 22 Parents have a legal duty to support and educate their children and to prevent them from becoming public charges. *Burrows v. Burrows,* 1994 OK 129, 886 P.2d 984, 991. Maintenance of a minor child is an enforceable parental duty and it cannot be shifted as a burden upon the shoulders of others. *Hart v. Hart,* 177 Okla. 428, 60 P.2d 747 (1936). Further, a basic rule of equity jurisprudence is that equity will refuse to lend its aid to one seeking its active interposition who has been guilty of any unlawful or inequitable conduct in the matter with relation to which he seeks relief. *McNeil v. Brogan,* 201 Okla. 125, 202 P.2d 696 *Third Syllabus* (1949). In other words, he who would invoke the equitable powers of a court must come before the court in relation to the matter at issue with clean hands. *Id.* at 699.

¶ 23 Specifically in relation to child support matters, it has been recognized that, when an able-bodied parent is voluntarily unemployed or underemployed, and, thus, has no income or a reduced income, it is proper to attribute to that individual for child support purposes either an actual monthly income based on the minimum wage or an income based on what the person could earn. *See Asal v. Asal,* 1998 OK CIV APP 54, 960 P.2d 849; *Andersen v. Fellers,* 1998 OK CIV APP 53, 960 P.2d 851, 853–854. Such recognition is nothing more than acknowledgment that equity will normally not favor reduction of a child support obligation where the parent's financial condition is due to his/her fault, or voluntary wastage or dissipation of his/her talents and assets. *Noddin v. Noddin,* 123 N.H. 73, 455 A.2d 1051, 1053 (1983).

¶ 24 Although this Court has never decided the precise issue, numerous courts from other jurisdictions have grappled with the question of how to handle child support in the situation where the non-custodial parent

the temporary child support. He attributed to each parent the minimum wage for a 40 hour week, consulted § 119 to arrive at a total combined child support figure of $218 per month and divided by 2 to arrive at a child support obligation for appellant of $109 per month.

13. We reject appellant's argument his due process rights were somehow violated because there was no trial of contested issues of fact in relation to the effect his incarceration, and consequent lack of income and earning capacity, and his lack of assets, should have on his support obligation, particularly concerning the application of §§ 118(A) and 118(B)(4). In essence, appellant contends he was deprived of an opportunity to show it would be unjust, inequitable, unreasonable or inappropriate under the circumstances or not in the best interests of his daughter to set any amount as a continuing/future child support obligation given his incarceration and financial condition. Appellant sought to present no evidence, other than the stipulations of the parties concerning his lack of income, earning capacity or assets and, as we view the record, the trial court did nothing affirmative to stop his presentation of other evidence on the equities of his situation. In fact, as we understand the record, the stipulations concerning his financial situation were, at least in part, appellant's attempt to show the trial court that it would be unjust, inequitable, unreasonable or inappropriate to set any amount as a continuing/future child support obligation. Stipulations admitting or agreeing to certain facts for the purpose of trial are binding and conclusive on the parties during the progress of the trial and on appeal, and if a cause is submitted for trial to the court upon an agreed statement of the facts, only questions of law remain for consideration. *Nanonka v. Hoskins,* 1982 OK 53, 645 P.2d 507, 508–509. Simply, appellant sought to present no other evidence concerning the equities of the situation and the record unequivocally shows appellant's attorney understood the June 1996 hearing was set for trial on the merits and final disposition on said date. See May 24, 1996 Motion to Settle Journal Entry, Exhibit A, pg. 5, ¶ 13, Original Record pg. 53. No due process violation occurred as argued by appellant.

is serving time in prison. Many of these cases are collected in *Loss of Income Due to Incarceration as Affecting Child Support Obligation*, 27 A.L.R.5th 540 (1995) and Cavanaugh and Pollack, *Child Support Obligations of Incarcerated Parents*, 7 Cornell J.L. & Pub. Pol'y 531 (1998). Although most of the cases seem to concern the issue of whether a pre-existing child support order should be modified downward due to the parent's incarceration, rather than with the exact issue before us, to wit: how should a parent's incarceration effect an initial setting of the support obligation, we deem the principles enunciated therein helpful in analyzing the present situation.[14] We also find ourselves in agreement with those cases from other jurisdictions that essentially hold either (1) that equitable concepts cannot generally be applied to eliminate an incarcerated parent's child support obligation or (2) that incarceration due to conviction for criminal activity may be equated with voluntary unemployment or underemployment for child support purposes. *See In re Marriage of Thurmond*, 265 Kan. 715, 962 P.2d 1064 (1998); *In re Marriage of Olsen*, 257 Mont. 208, 848 P.2d 1026 (1993); *Koch v. Williams*, 456 N.W.2d 299 (N.D.1990); *Ohler v. Ohler*, 220 Neb. 272, 369 N.W.2d 615 (1985); *Richardson v. Ballard*, 113 Ohio App.3d 552, 681 N.E.2d 507 (1996); *Topham–Rapanotti v. Gulli*, 289 N.J.Super. 626, 674 A.2d 650 (Super.Ct. Ch.Div.1995); *Davis v. Vance*, 574 N.E.2d 330 (Ind.Ct.App.1991).

¶ 25 Even though incarceration due to engaging in criminal conduct is not exactly like voluntary unemployment or underemployment, we believe it is sufficiently analogous so that it is equitable to attribute a certain amount of income to an incarcerated parent, notwithstanding the fact the parent has minimal or no income. Certainly, criminal activity can foreseeably lead to incarceration and such activity is obviously within an individual's control. *In re Marriage of Thurmond, supra*, 962 P.2d at 1073. In our opinion, a loss or reduction in income resulting from a conscious choice to engage in criminal activity surely may be considered differently than where the loss or reduction is caused by an event beyond a parent's control, e. g. illness or injury. *Id.* In the former situation, attribution to a parent of, at least, some income is merely a recognition that an able-bodied parent, notwithstanding their incarceration which causes a present lack of income or real earning capacity, has a responsibility, and can be charged with a duty, to provide, at least, some minimal amount of support for their children's well-being. We simply do not agree with appellant that the most equitable course would be to totally relieve a parent in his circumstances of any support obligation toward his offspring.[15]

¶ 26 When one seeks relief from the obligation to pay child support on the basis of incarceration for criminal activity, violation of the statute resulting in the incarceration is directly related with the matter of

**14.** However, in that the situation here does not involve an incarcerated parent's attempt to modify downward a pre-existing child support obligation set prior to the parent's imprisonment, we need not and do not rule on the affect, if any, incarceration would have on such an attempt.

**15.** Although we have been unable to find a legislative enactment that definitively tells us how to treat incarcerated individuals in relation to the child support obligation, statutes do exist which appear to point to a legislative intent and preference that even incarcerated individuals have a responsibility, duty and obligation to support their minor children. 43 O.S.1991, § 211 provides in relevant part:

In case the husband or wife ... is sentenced to imprisonment either in the county jail or State Penitentiary for the period of one (1) year or more, the district court of the county ...

where the husband or wife ... not imprisoned resides, may, on application by affidavit of such husband or wife, setting forth fully the facts, supported by such other testimony as the court may deem necessary, authorize him or her to manage, control, sell or encumber the property of the said husband or wife for the support and maintenance of the family....

22 O.S.Supp.1994, § 1514, which sets out the purposes and policies of the criminal justice and corrections system, provides in pertinent part at subsection 5 thereof:

(5) Work policy for offenders. It is the policy of this state that offenders should work when reasonably possible, either at jobs in the private sector to pay restitution and support their dependents, or at community service jobs that benefit the public, or at useful work while in prison or jail, or at educational or treatment endeavors as a part of a rehabilitation program.

child support. *Ohler v. Ohler, supra,* 369 N.W.2d at 618. Incarceration of father here necessarily means he was found to have feloniously violated our criminal laws [21 O.S. 1991, § 5] [16] and it is plain to us that incarceration is a foreseeable consequence of criminal activity. In our view, a criminal should not be offered a reprieve from his child support obligation when, in the normal circumstance, a voluntarily unemployed person would not be afforded similar relief. We further do not see how completely relieving a parent in appellant's situation of any child support obligation would be in the best interests of the child. The only person to benefit would be appellant who would simply be able to walk away from his responsibility and duty to provide, at least, a minimal amount of support for his progeny.

¶ 27 We hold, therefore, the trial court's determination to attribute to appellant the minimum wage for a 40 hour workweek for the purpose of figuring his child support obligation was not error under our statutes. Based on the stipulations of the parties, it was proper for the trial court to decide such course was the most equitable of the alternatives provided in § 118(B)(4), and the trial court was not required to deviate from the statutory child support guidelines merely because appellant was incarcerated which brought about his present financial circumstances.

## PART V. THE TRIAL COURT ERRED IN SETTING APPELLANT' S FUTURE/ CONTINUING CHILD SUPPORT OBLIGATION WITHOUT BEING PRESENTED ANY EVIDENCE TO SHOW MOTHER' S GROSS INCOME.

¶ 28 As noted in **PART II, FACTS AND PROCEDURAL HISTORY**, the trial court set appellant's child support obligation at $109 per month even though no evidence or stipulations were submitted concerning the gross monthly income of mother. As also noted in **PART II**, the transcript of the May in-court proceeding shows the trial court was verbally informed by DHS's counsel that the AFDC case had closed in December 1995, i.e. apparently that mother was no longer receiving AFDC payments. The record simply does not reveal whether or not mother was working after the AFDC payments ended, or what income, if any, she had after such time.

¶ 29 Without evidence of the monthly gross income of mother it was impossible for the trial court to accurately determine the support obligation of appellant because the Guidelines base the support obligation of the non-custodial parent on a formula which takes into account the combined income of both parents. Although it might be appropriate to attribute minimum wage to an unemployed mother for the purpose of determining a father's child support obligation [*State ex rel. Dept. of Human Services on Behalf of Snellings v. Strohmeyer,,* 1995 OK CIV APP 157, 925 P.2d 77] here there was no evidence that mother was unemployed or without an income such that attribution to her of the minimum wage was appropriate under § 118(B)(4). Thus, there was insufficient evidence presented to the trial court to sustain a judgment setting father's continuing/future child support obligation at $109 per month, and just as with the AFDC reimbursement award, the future support obligation must be reversed and remanded for further proceedings.[17]

## PART VI. CONCLUSION.

¶ 30 Without conducting a trial or being presented any evidence to show the amount of AFDC payments to mother it was error for the trial court to enter a judgment against appellant for AFDC reimbursement. Further, our child support statutes did not require the trial court to use zero for father's gross monthly income for the purpose of figuring his future/continuing child support obligation—instead, it was proper to attrib-

---

16. 21 O.S.1991, § 5 provides, "[a] felony is a crime which is, or may be, punishable with death, or by imprisonment in the penitentiary."

17. In view of our disposition of this matter—i.e. reversal of both the AFDC reimbursement award and the $109 per month future/continuing child support obligation and remand for further proceedings—we need reach no other issue raised by appellant on appeal.

ute to him a gross monthly income based on the minimum wage for a 40 hour work-week. However, because under our statutes the non-custodial parent's child support obligation is based on a formula using the combined monthly gross income of both parents and no evidence was presented to the trial court concerning mother's gross monthly income, there was insufficient evidence presented to the trial court to set father's support obligation at $109 per month.

¶ 31 The Court of Civil Appeals' Opinion is **VACATED IN PART** and the trial court judgment is **REVERSED IN PART** and this matter is **REMANDED FOR FURTHER PROCEEDINGS**.

¶ 32 HARGRAVE, V.C.J., and HODGES, WILSON, KAUGER and WATT, JJ., concur.

¶ 33 SIMMS, J., concurs in result.

¶ 34 SUMMERS, C.J., dissents.

¶ 35 OPALA, J., not participating.