2007 OK CIV APP 103

Colene FISHER, Petitioner/Appellant,

v.

Keifer FISHER, Respondent/Appellee.

No. 102,872.

Court of Civil Appeals of Oklahoma, Division No. 3.

July 27, 2007.

Certiorari Denied Oct. 22, 2007.

918

Clark S. Wood, Sallisaw, Oklahoma, for Petitioner/Appellant.

Jim Pearson, Jim Pearson, P.C., Oklahoma City, OK, for Respondent/Appellee.

BAY MITCHELL, Vice–Chief Judge.

¶ 1 Colene Fisher (Wife) appeals from several orders in the Decree of Dissolution of Marriage filed November 17, 2005. The court determined the average yearly gross income of Keifer Fisher (Husband) was $120,000, and Wife's average yearly gross income was $17,000 to establish Husband's monthly child support obligation at $1,112.07. The court also awarded Wife $27,000 in support alimony, payable at a rate of $1,500 per month. Wife contends the trial court abused its discretion in setting the amount of child support and alimony, and in dividing the marital property. Wife filed a motion to reconsider, which the trial court denied.

¶ 2 The parties were married in 1989 and had two children. Husband set up a dental practice as a corporation, from which he drew a salary. Wife also worked for the dental practice as a dental technician. The parties owned the office building that housed the dental practice, as well as most of the dental equipment, fixtures and furnishings, which they leased to the dental corporation. Wife filed for divorce in 2003.

## CHILD SUPPORT

¶ 3 Wife first contends the court abused its discretion by setting Husband's income at $120,000 and hers at $17,000 for the purpose of calculating child support. Child support proceedings are matters of equitable cognizance. *State, ex rel. Dep't of Human Servs. v. Baggett,* 1999 OK 68, ¶ 3, 990 P.2d 235, 238. The amount of child support will only be set aside if it is clearly against the weight of the evidence or unjust or inequitable. *Id.* We review issues of law *de novo,* giving no deference to the trial court's legal ruling. *Id.,* ¶ 4, 990 P.2d at 238.

¶ 4 Child support is computed as a percentage of the combined gross income of both parents. 43 O.S. Supp.2002 § 118(E)(1). Gross income includes both earned income, which includes income from sources such as wages and salaries, and passive income, which includes income from sources such as dividends, pensions and rent. § 118(E)(2). For income from self-employment, rent or a closely held corporation, gross income is defined as "gross receipts minus *ordinary and necessary expenses* required for self-employment or business operations." § 118(E)(3)(a) (emphasis added). Additionally, expense reimbursements such as a company car "shall be counted as income if they are significant and reduce personal living expenses." § 118(E)(3)(e).

¶ 5 The statute does not specify what expenses may be deducted from the gross income of a business. However, the trial court is ordered to "*carefully review* income and expenses from self-employment or operation of a business *to determine an appropriate level of gross income* available to the parent to satisfy a child support obligation." § 118(E)(3)(c) (emphasis added). After any appropriate expenses have been deducted, the court then chooses the most equitable method of computing gross income for each parent, such as including all earned and passive monthly income or averaging the gross

monthly income for the previous three years. § 118(E)(4).

¶ 6 Wife claims the court abused its discretion by setting Husband's income at $120,000. She contends Husband's average yearly gross income was actually $158,572.07, based on his salary, contributions to his 401K, reimbursed auto expenses and rental income minus allowable expenses.[1] There was competent evidence at trial that although Husband drew an annual salary from the dental corporation, he set the amount of his yearly salary. For the years 2002 through 2004, his salary averaged approximately $101,000.[2] Husband also received an average vehicle reimbursement in the amount of $4,300. Further, Husband's corporation rented the building and the majority of the dental equipment from Husband and Wife. Husband retained the dental corporation, the building and the dental corporation after the divorce. The rent averaged $21,500 in the three years prior to the divorce after all expenses and depreciation were deducted. Wife claims that depreciation was improperly deducted, and that without such deduction the average rental income was $37,400 per year. Husband also voluntarily contributed a yearly average of $8,500 to his 401K plan. Finally, Husband and Wife sustained a loss on their farm for at least two years prior to the divorce in the average amount of $6,500. Wife retained the farm after the divorce. After considering this evidence, the court determined Husband's average gross income was $120,000.

¶ 7 Unfortunately, it is not possible to determine what expenses or income the trial court used in determining Husband's income to be $120,000. The court did not state whether it deducted depreciation or farming loss, or included vehicle reimbursement or the 401K pension as income. The court only disclosed that it averaged the income for both Husband and Wife. We calculated a number close to the trial court's conclusion by including Husband's salary, rent, and vehicle reimbursement, but not the voluntary contributions to his 401K, while deducting all rental expenses including depreciation and the farming loss. Alternatively, adding Husband's salary, vehicle reimbursement, 401K contributions for the years 2001–2003, but not any income for rental income, also results in approximately $120,000. Under the possible scenarios, however, the trial court's finding of $120,000 yearly average gross income for Husband was lower than the clear evidentiary parameters and thus an abuse of discretion. We thus remand for the court to consider all the income available to Husband for child support purposes. We consider Wife's assertions of error to provide guidance to the trial court on remand.

¶ 8 Wife next contends the court should have ignored Husband's income from the last year prior to the divorce, 2004, because Husband told her he would work less to reduce his child support and alimony obligations.[3] Instead, Wife wants the court to average the years 2001 through 2003. However, the court heard the testimony from trial and had the discretion pursuant to § 118(E)(4) to consider the previous three years in averaging Husband's gross income. After reviewing the transcripts, we find no error in averaging the last three years.

¶ 9 Next, Wife contends the trial court could not use depreciation from the rental property or business equipment as a deduction from Husband's gross income, because it does not reduce Husband's gross income available to pay child support. Husband counters that depreciation is a proper business expense, and the court has discretion to allow this deduction from gross income pursuant to 43 O.S. Supp.2002 § 118(E)(3)(a). The child support statute does not refer to depreciation or specify whether it can be deducted from gross income to calculate child support. Instead, § 118(E)(3) requires courts to carefully review income and expenses to determine an appropriate level of

---

1. Wife calculated Husband's gross income based on an average of the years 2001 through 2003 without considering the year 2004.

2. All the figures used by this Court are approximations based on the evidence in the record.

3. Wife asserted Husband invested more on employee benefit programs and purchased more equipment after the divorce to use as expenses of the corporation instead of paying himself as much salary as he had previously.

gross income, and only deduct "ordinary and necessary expenses required for self-employment or business operations." The question of whether depreciation is a deductible expense has not been ruled on by the Oklahoma Supreme Court. In *Minnich v. Minnich*, 1995 OK CIV APP 60, ¶9, 898 P.2d 747, 751, the Oklahoma Court of Civil Appeals *assumed without discussion* that the trial court had the discretion to determine whether car depreciation was deductible as a business expense. *Id.* (remanding for trial court to determine reasonableness of all deductions from salesperson's gross income, especially vacations).

¶10 Numerous courts from other jurisdictions have considered this issue with varying results, however. The Connecticut Supreme Court surveyed case law from other jurisdictions and observed three basic approaches to the problem:

(1) *depreciation is a book figure* which does not involve any cash outlay nor reduce actual dollar income and, therefore, should not be allowed as a deduction;

(2) *depreciation diminishes income-producing capacity* and leads to the eventual replacement of the asset involved thereby warranting its deduction; and

(3) depreciation should not categorically either be deducted as an expense or treated as income, but rather that the extent of its inclusion, if any, *should depend on the particular circumstances of each case.*

*Stoner v. Stoner*, 163 Conn. 345, 307 A.2d 146, 151 (1972); *Treatment of Depreciation Expenses Claimed for Tax or Accounting Purposes in Determining Ability to Pay Child or Spousal Support* (1995), 28 ALR 5th 46.

¶11 Courts that have refused to allow depreciation have emphasized that depreciation is not a cash expense that reduces the obligor's ability to pay child support. *E.g., Stewart v. Stewart*, 243 Mont. 180, 793 P.2d 813, 814 (1990) (depreciation is not a legitimate business expense because it is only a paper loss that does not affect disposable or gross income); *Houston v. Smith*, 882 P.2d 240, 244 (Wyo.1994) (citing state's interest in assuring adequate economic support for minor children to find depreciation for real estate is not a "reasonable unreimbursed legitimate business expense," because it does not reduce net income). "Depreciation is a mere book figure which does not either reduce the actual dollar income of the [parent] or involve an actual cash expenditure when taken." *Stoner*, 307 A.2d at 152. Similarly, the Pennsylvania court in *McAuliffe v. McAuliffe*, 418 Pa.Super. 39, 613 A.2d 20, 22 (1992), observed the calculation of a party's income *"must reflect actual available financial resources* and not the oft-times fictional financial picture which develops as the result of depreciation deductions taken against ... income as permitted by the federal income tax laws." *Id.* (emphasis added).

¶12 By contrast, courts that have allowed deductions for depreciation often rely on the traditional treatment of depreciation for tax purposes. *Spotts v. Spotts*, 355 So.2d 228, 229 (Fla.App.1978) (referring to provision of Internal Revenue Code that authorizes a deduction for depreciation as its justification to find business depreciation should be subtracted from income for child support purposes, because depreciation is a cost of producing income). Similarly, in *Turner v. Turner*, 586 A.2d 1182, 1187 (Del. 1991), the court noted "depreciation is considered by generally accepted accounting principles to be an expense in determining net taxable income, it *may* also be a legitimate business expense for the purpose of computing the amount of net income which is available for child support ... The concept of depreciation, as an expense, is a recognition of the fact that certain fixed assets, which are used in a business, wear out gradually and will eventually need to be replaced." *Id.* These cases are not persuasive in Oklahoma, however, because the fact that depreciation is an allowable income tax deduction is not controlling. "Taxable income on an income tax return does not control 'income' for child support purposes." *Minnich v. Minnich*, 1995 OK CIV APP 60, ¶9, 898 P.2d 747, 750. Further, our child support statute is based on gross income, not net income as considered in *Turner*.

¶13 Depreciation is a book deduction allowed to calculate *net income* for tax pur-

poses that does not involve an actual cash expense when taken. In this court's view, allowing a deduction for depreciation would not accurately reflect the *gross income* available to pay child support. Depreciation can result in an arbitrary and overinflated deduction to gross income for the purpose of calculating child support.[4] Depreciation is not an "ordinary and necessary expense" required for business operations, and should not be allowed as a deduction from gross income. § 118(E)(3)(a). Thus, the trial court abused its discretion by allowing a depreciation deduction from Husband's rental income.

¶ 14 On remand, the court should consider all sources of Husband's income including voluntary contributions to his 401K and his vehicle reimbursement. However, the court should not consider any depreciation deductions.

¶ 15 Wife also contends the court abused its discretion by finding Wife had an income of $17,000. Wife, however, failed to present much evidence regarding her income for the court to consider. The only tax return Wife introduced was for 2004. This showed her gross income from the sale of insurance in the first year, when she only worked ten months, was $12,435. She testified that she quit because she learned she would have to pay back commissions if the policies were not retained. At the time of trial, Wife had been selling air purification systems, but could not tell the court exactly how much she had made in the first six months of the year. Wife also bred and sold purebred dogs. She failed, however, to testify or present evidence regarding how much income she made yearly from the breeding and sale of these dogs. Wife failed to show that the attributed income of $17,000 a year was clearly against the weight of the evidence.

### SUPPORT ALIMONY

¶ 16 Wife next contends the award of only $27,000 in support alimony was an abuse of discretion and she should have been awarded at least $200,000 payable at a rate of $3,000 per month. She asserts her disposable after-tax income is less than $900 per month. Wife's monthly need without considering the children's needs or any vacations, haircuts, *etc.* is $2,849. The trial court is vested with wide discretion in awarding alimony in a divorce action. *McLaughlin v. McLaughlin*, 1999 OK 34, ¶ 12, 979 P.2d 257, 260. We will not disturb the trial court's judgment absent an abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence. *Id.* The burden of showing the court erred is on the party appealing. *Id.*

¶ 17 "Alimony is an allowance made by the court for the maintenance of a party." *Peyravy v. Peyravy*, 2003 OK 92, ¶ 14, 84 P.3d 720, 723. Support alimony is a need-based concept, the purpose of which is to "cushion the economic impact of postmarriage transition and a spouse's readjustment to gainful employment." *Ray v. Ray*, 2006 OK 30, ¶ 10, 136 P.3d 634, 636. Although each case depends on its own facts and circumstances, an award of alimony must be reasonable. *McLaughlin*, ¶ 13, 979 P.2d at 260. Ability to pay is not the sole criterion. *Id.* Instead, alimony is based upon the consideration of several factors including:

> demonstrated need during the post-matrimonial economic readjustment period; the parties' station in life; the length of the marriage and the ages of the parties; the earning capacity of each spouse; the parties' physical condition and financial means; the mode of living to which each spouse has become accustomed during the marriage; and evidence of a spouse's own income-producing capacity and the time necessary to make the transition for self support.

*Id.*, ¶ 13, 979 P.2d at 260–61 (internal footnotes omitted). "The seeker of support alimony carries the burden of affirmatively demonstrating the need for excess funds to cushion the economic transition from marital

---

**4.** An example of depreciation claimed by Husband helps to illustrate this point. In the three years prior to the divorce, Husband took almost $21,000 in depreciation for the vehicle he used for his business, which was also the personal vehicle he was awarded in the divorce decree. However, this was not money that was spent by Husband out-of-pocket or that would affect his ability to pay child support.

dependency to employment." *Ray*, ¶ 11, 136 P.3d at 637.

¶ 18 Wife contends in her motion to reconsider and on appeal that she had fibromyalgia that would make it difficult for her to work, and that her medical condition required expensive prescriptions. Wife, however, failed to present any testimony or medical records to support this allegation at trial. She presented a list of her expenses and testified about her lack of vacations. She did not, however, present any evidence regarding how long she anticipated needing support before she would be self sufficient. In fact, she did not even know how much money she had made in commissions at her current job. Further, Wife received substantial farm land in the divorce decree that she could sell and also had almost $100,000 in cash from Husband's retirement account. Wife failed to show that she would need additional alimony to meet her needs or that she would not be able to obtain a job sufficient to meet her needs within 18 months.

¶ 19 Wife and Husband were married for sixteen years. Wife had worked at the dental practice during most of the marriage, and had a certificate to be a dental technician and to take x-rays. She also obtained an insurance license after the separation and had worked selling insurance for almost a year. Further, she had registered dogs that she could breed and sell. Wife had employable skills and was not totally financially dependent on Husband. Wife failed to show why she could not obtain the necessary funds to meet her need by the end of her support alimony.[5]

¶ 20 We find the court did not abuse its discretion in setting alimony at $27,000 because Wife failed to meet her burden of showing she had an excess need that would last beyond the period for which support alimony was awarded. *See Johnson v. Johnson*, 1983 OK 117, ¶ 24, 674 P.2d 539, 546 (court did not abuse its discretion in setting amount of alimony where wife had substantial amount of property and she failed to show amount of income from that property, length of time to make transition to self-support and cost of maintenance during readjustment period). Even if Husband's average yearly income is increased, the alimony is still within the discretion of the court.

### PROPERTY DIVISION

¶ 21 Finally, Wife asserts the trial court abused its discretion by not dividing the property equally. She also contends the court erred by valuing certain built-in features of the marital residence separately from the assessed value of the property evaluator. These items consisted of a surround sound system, custom speakers and a sprinkler system that were all built in fixtures that could not be removed without damaging the home. Husband argues these items should be added to the assessed value because they did not specifically appear on the appraisal. The court set a combined value of $11,000 to these items, and added this amount to the stipulated value of the house awarded to Wife. Wife argued this caused her to be awarded an inequitable share of the property. Wife was awarded a total of $444,338.83 in property, while Husband was awarded $460,622.75 in property.

¶ 22 We reject Wife's argument that the property division must be equal. The property division does not have to be equal, but only equitable. *Gamble v. Gamble*, 1970 OK 150, ¶ 32, 477 P.2d 383, 391. The trial court has wide discretion in the division of marital property and the decision will not be disturbed unless contrary to law, against the clear weight of the evidence or an abuse of discretion is shown. *Jackson v. Jackson*, 2002 OK 25, ¶ 2, 45 P.3d 418, 422. After carefully reviewing the record, we find Wife has failed to show that this property division was inequitable or unjust.

¶ 23 AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

ADAMS, J., and JOPLIN, P.J., concur.

---

**5.** We also note that Husband paid temporary support of $2,500 per month for a period of approximately 16 months during their separation.