2011 OK CIV APP 100

Patricia Bowers EDWARDS, Individually and as Natural Mother and Next Friend of Robert Drew Bowers, an Incapacitated Person, Plaintiff/Appellant,

v.

BANCFIRST, a National Banking Association, Defendant/Appellee,

and

Rex Urice, an individual; The Robert S. Bowers and Eloise C. Bowers Foundation, a private foundation; John C. Duty, an individual; Michael A. Bickford, an individual; Personal Nursing Care, Inc., an Oklahoma Corporation, Defendants.

No. 109,095.

Court of Civil Appeals of Oklahoma, Division No. 4.

June 30, 2011.

See also, 220 P.3d 1145.

Babette Patton, Breathwit & Patton, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellant.

James K. Larimore, David B. Donchin, Jennifer K. Christian, Durbin, Larimore & Bialick, Oklahoma City, Oklahoma, for Defendant/Appellee.

KEITH RAPP, Judge.

¶ 1 The plaintiff, Patricia Bowers Edwards (Edwards), individually and as natural moth-er and next friend of Robert Drew Edwards (Drew), an incapacitated person, appeals a Trial Court Order granting partial summary judgment to the defendant, BancFirst (Bank).[1]

## BACKGROUND

¶ 2 Aspects of this case have been the subject of several appeals. The facts and history of the matters are set out in *Edwards v. Urice,* 2004 OK CIV APP 86, 99 P.3d 256 and *Edwards v. Urice,* Case Number 104,-956, Court of Civil Appeals, July 17, 2008, (unpublished).

¶ 3 Edwards' mother, Eloise Cooper Bowers (Bowers), died in 2001. During her lifetime, she had established the Eloise Cooper Bowers Trust (Bowers Trust) with BancFirst, as trustee. She also established the Bowers Foundation, a charitable foundation (Foundation). At her death, the Foundation was to receive Bowers' remaining assets, valued at approximately seven million dollars.

¶ 4 In 2001, Edwards sued to dissolve the Foundation on ground of undue influence. A court order stayed distribution to the Foundation. A judgment in her favor was affirmed in *Edwards v. Urice,* 2009 OK CIV APP 20, 220 P.3d 1145, and certiorari was denied on December 15, 2008.

¶ 5 On January 20, 2003, BancFirst filed the estate tax return, claiming no taxes due. Apparently, as a result of the suit to dissolve the Foundation, the Internal Revenue Service questioned the seven million dollar deduction for the assets that were to go to the Foundation and assessed approximately four million dollars in estate taxes. BancFirst and the Internal Revenue Service had an agreement that permitted BancFirst to not pay estate tax pending the outcome of Edwards' action, however, not to exceed the limitations period for filing the tax assessment for taxes due.

¶ 6 In June 2007, Bank of Oklahoma was substituted as trustee of the Bowers Trust

---

1. This is a final order disposing of the last claim in a multiparty, multiclaim action. All other claims as to all other parties have been resolved.

by order of the court. As noted, the challenge by Edwards in the Foundation litigation case became final on December 15, 2008. However, Bank of Oklahoma did not pay the estate taxes, plus interest of approximately one million two-hundred thousand dollars, until February 2009. The case now under review involves a claim by Edwards that BancFirst, as trustee, negligently failed to pay the estate taxes, under a procedure which would allow a refund if BancFirst prevailed in the Foundation litigation, but which would stop the accrual of interest.[2]

¶ 7 Edwards' claim is for approximately $724,000.00, which recognizes a credit for appreciation from investment of the unpaid interest. In addition to its Statute of Limitations defense, BancFirst maintains that no damages were suffered because of appreciation and income from investment.[3]

¶ 8 BancFirst gives January 11, 2010, as the date Edwards first asserted her claim for the interest in a deposition. Then, BancFirst proposed three dates, all in excess of two years earlier, on which the Statute of Limitations began to run.

¶ 9 The first date was in June 2002, when the taxes were due and the interest began. A time-bar date occurred two years later.

¶ 10 Next, BancFirst points to a series of letters in October 2004, between Edwards' attorney and then counsel for the Bowers Trust. In these letters then counsel for BancFirst demanded that Edwards agree to lift the stay of distribution to the Foundation. The series of letters discuss the IRS and its position regarding disallowance of the charitable deduction and the tax assessment deadline. Edwards' attorney advised that Edwards would not agree to lifting the stay and that the taxes could be paid under conditions where a refund could be obtained if Edwards' challenge to the validity of the distribution to the Foundation was unsuccessful. Thus, BancFirst argues that the Statute of Limitations began in October 2004, as an alternate date of beginning.

¶ 11 BancFirst proposed June 2007, as the third beginning date. In June 2007, BancFirst transferred the Bowers Trust to Bank of Oklahoma. According to the argument, Edwards then possessed all of the information concerning the taxes due, the nonpayment of the taxes and the accrual of interest.

¶ 12 In response, Edwards does not challenge the chronology of events concerning the transfer to Bank of Oklahoma.[4] Her position was that she did not have standing and her claim did not accrue until December 15, 2008. On that date, the lawsuit became final regarding her challenges to the Bowers Trust amendments and the Foundation, resulting in her being adjudicated as a beneficiary of the Bowers Trust.

¶ 13 The trial court used the June 2007 date of transfer of the Bowers Trust from BancFirst to Bank of Oklahoma as the starting date for beginning the Statute of Limitations. The trial court found that Bank of Oklahoma was the real party in interest as of the date of the transfer and had the standing and information necessary to bring the claim for not paying the taxes.[5] Next, the trial court found that Edwards did not assert a claim for herself or the Bowers Trust until her deposition on January 11, 2010. Therefore, the claim was barred.

¶ 14 Edwards appeals.

## STANDARD OF REVIEW

¶ 15 Summary judgment is proper only when it appears that there is no substantial controversy as to any material fact and that one of the parties is entitled to judgment as a matter of law. *Jordan v. Jordan*, 2006 OK

2. BancFirst originally argued that Edwards did not have standing to assert the claim because Bank of Oklahoma was the trustee. The trial court agreed, but also ruled that Edwards could bring the action if Bank of Oklahoma relinquished its claim to Edwards, which it did. BancFirst has not appealed that ruling. *See* n. 7.

3. Record, Tab 4.

4. Edwards and BancFirst are in disagreement about the amount of money allegedly earned on the money that represented the unpaid taxes. However, summary judgment did not involve this issue.

5. This finding has not been challenged by summary judgment evidentiary materials.

88, ¶ 17, 151 P.3d 117, 121. "Since a summary judgment disposes solely of issues of law we review it *de novo*." *Young v. Macy*, 2001 OK 4, ¶ 9, 21 P.3d 44, 47. *De novo* means without deference to the trial court's legal ruling. *Fisher v. Fisher*, 2007 OK CIV APP 103, ¶ 3, 171 P.3d 917, 919. When, as here with the Statute of Limitations defense, the defendant relies upon an affirmative defense then the defendant, as the party with the burden of proof, must meet the same standards as a plaintiff movant. *Akin v. Missouri Pacific Railroad Co.*, 1998 OK 102, ¶ 9, 977 P.2d 1040, 1044.

## ANALYSIS AND REVIEW

▓ ¶ 16 The summary judgment record shows: (1) The estate taxes were not paid by BancFirst when due resulting in an excess of one million dollars in interest; (2) BancFirst transferred the Bowers Trust to Bank of Oklahoma in June 2007; (3) Bank of Oklahoma had sufficient information as a result of the transfer to know that the taxes had not been paid and that interest was accruing; (4) Bank of Oklahoma was the real party in interest and had standing to assert a claim against BancFirst, but did not do so; (5) Edwards was finally adjudicated a beneficiary of the Bowers Trust as of December 15, 2008; and (6) Edwards' first assertion of a claim was in a deposition on January 11, 2010.[6]

▓ ¶ 17 The "pure" Statute of Limitations measures the time within which an action must be brought, and extinguishes the remedy. *Cole v. Silverado Foods, Inc.*, 2003 OK 81, 78 P.3d 542 n. 23.

> A statute of limitations extinguishes a remedy for an existing right by penalizing a party who sleeps on that right.

*Lester v. Smith*, 2008 OK CIV APP 97, ¶ 7, 198 P.3d 402, 404–05 (citing *Neer v. State ex rel., Oklahoma Tax Comm'n*, 1999 OK 41, 982 P.2d 1071).

¶ 18 Edwards maintains that the Statute of Limitations does not bar her claim for interest on unpaid taxes because she could not prosecute the claim to a successful conclusion due to the fact that she did not have standing until December 15, 2008.[7] For purposes of summary judgment, BancFirst necessarily concedes the premise that Edwards did not have standing because it successfully raised that issue. Afterward, Bank of Oklahoma transferred the claim to Edwards.[8] In turn, Edwards necessarily concedes that she did not raise the claim until her deposition on January 11, 2010.[9]

6. Edwards' summary judgment response did not present evidentiary materials to put items (3) and (6) of this paragraph in controversy. Edwards admitted that she asserted a claim in her January 11, 2010 deposition, but stated that BancFirst made no objection at that time to that element of damages. Record, Tab 3. The other items are not controverted by either party.

7. It does not appear that Edwards argued for "tolling" of the Statute of Limitations.
   "Tolling" is a term of art which refers to the temporary suspension of statutory time bar for bringing a suit because of either some "disability" on the part of the plaintiff which prevents that person from commencing the action or some activity on the part of the defendant forestalling prosecution of the claim against the defendant. BLACK'S LAW DICTIONARY (5th ed. 1979) at 1334 defines the word "toll" in the following manner: "To suspend or stop temporarily as the statute of limitations is tolled during the defendant's absence from the jurisdiction and during the plaintiff's minority." *Thompson v. Anchor Glass Container Corp.*, 2003 OK 39, 73 P.3d 836 n. 13.
   This Court notes that, under Edwards' position, there is no suspension of the Statute of Limitations. Thus, Edwards' argument is understood to be that the Statute of Limitations did not start until she was finally adjudicated as a Bowers Trust beneficiary in December 2008.

8. The transfer, or relinquishment, requirement arose as a result of the ruling on BancFirst's Fourth Motion For Partial Summary Judgment on June 10, 2010. *See* Record, Tab 5, p. 2; and, June 21, 2010, Journal Entry Minute, District Court Docket Sheet. Record, Tab 6. The parties have no dispute about this occurrence or that the claim was relinquished. However, the document relinquishing or transferring the claim to Edwards has not been identified in the Record by either party. The relinquishment is documented in the District Court Docket Sheet entry of June 10, 2010. Record, Tab 6. The Record does not show why the relinquishment did not occur at any earlier time beginning with the date the Bowers Trust was transferred to Bank of Oklahoma.

9. Edwards' summary judgment materials do not provide any basis to conclude that a question of fact exists on this point.

¶ 19 Edwards relies on *MBA Commercial Const., Inc. v. Roy J. Hannaford Co., Inc.* 1991 OK 87, 818 P.2d 469, and *Marshall v. Fenton, Fenton, Smith, Reneau and Moon, P.C.,* 1995 OK 66, 899 P.2d 621. These cases, and others, establish the "discovery rule" and apply it to the facts of those cases. In those cases. the Court held that the two-year limitations period applicable to negligence actions begins to run from the date the negligent act occurred or from the date the plaintiff should have known of the act complained of, but a negligence claim accrues when any injury to the plaintiff, for which an action could proceed, is certain and not merely speculative. The "certainty" requirement refers to the fact that damages have been sustained and not to the *amount* of damages. *Marshall,* 1995 OK 66 at ¶ 6, 899 P.2d at 623.

The *Marshall* Court stated:

A cause of action does not accrue until the litigant first could have maintained his action to a successful conclusion. In order to maintain an action for negligence to a successful conclusion, the litigant must be able to allege injury or damages.

*Marshall,* 1995 OK 66 at ¶ 10, 899 P.2d at 624.

¶ 20 Thus, Edwards' position becomes straightforward. As all agree, she could not bring the action until she was finally adjudicated a beneficiary of the Bowers Trust *and* until the Bowers Trust transferred or relinquished the claim to her. Until those events took place, the claim belonged to Bank of Oklahoma.

¶ 21 However, Edwards' case presents a significantly different set of facts than *Marshall* and *MBA Commercial Const., Inc. In Edwards' case there is an intervening claimant, Bank of Oklahoma, that could have brought the action.* In the "discovery rule" cases, there was one claim, one injured party and the Statute of Limitations did not commence immediately because of the application of the "discovery rule."

¶ 22 Here, the facts giving rise to a claim, the nonpayment of estate taxes, is common to Edwards and Bank of Oklahoma. The loss in the form of interest is identical for Edwards and the Bank of Oklahoma.

¶ 23 However, the rights of Edwards and Bank of Oklahoma to prosecute the claim did not co-exist. Edwards had to have the claim relinquished to her. Thus, the issue is: Whether Edwards may disregard the running of the Statute of Limitations against Bank of Oklahoma on the ground that her "disability" (lack of standing) suspends the running of the Statute of Limitations as to her.

¶ 24 In *Aldridge v. Caskey,* 1930 OK 355, 144 Okla. 204, 291 P. 91, a lawsuit was filed against adverse claimants in possession. The only question presented on appeal was whether, after the statute had run in favor of the parties in possession, the plaintiff, a minor, could maintain the action after the expiration of fifteen years from the date the adverse possession commenced. The Court held, "When the Statute of limitations has been set in motion during the lifetime of the ancestor, his death will not suspend it, even as against minor heirs." *Aldridge,* 1930 OK 355 at ¶ 10, 144 Okla. 204, 291 P. at 92 [citing *Murray v. Houghton,* 2 Ind. T.504, 52 S.W. 48, 49 (Ind.Terr.1899)]. Here, Bank of Oklahoma is analogous to the ancestor and Edwards' lack of standing is analogous to the heirs' minority.

¶ 25 In *Green v. Wahl,* 1925 OK 1021, 117 Okla. 292, 246 P. 419, Green, as transferee, based his claim under a conveyance from a person whose right of recovery was barred at the time of the execution of the deed to Green. Therefore, the Court sustained the plea of limitation against Green's right of recovery. *See Long v. City of Tulsa,* 1947 OK 153, 199 Okla. 217, 184 P.2d 800 (finding no merit in the argument, that the city could not rely upon the Statute of Limitations against plaintiff, a subsequent purchaser of the property). The point of these cases is that the Statute of Limitations was running against Bank of Oklahoma, and appears to have done so by the time it relinquished the claim to Edwards.[10]

---

**10.** The "tacking of possession" for purposes of adverse possession provides an analogy by "tacking" the time period where Bank of Oklahoma was the claimant to the time period when Ed-

¶ 26 Moreover, Edwards received from Bank of Oklahoma no greater rights than Bank of Oklahoma had to transfer. An assignee of a chose in action takes it subject to existing claims and equities and acquires no greater interest therein than the assignor had at the time of his assignment. *Sarkeys v. Marlow*, 1951 OK 195, ¶¶ 17–18, 205 Okla. 15, 235 P.2d 676, 679.

## CONCLUSION

¶ 27 The trial court did not err by its ruling that Edwards' claim against Bank for the interest that accrued on unpaid Federal estate taxes was barred by the Statute of Limitations. Even though she could not bring the action until Bank of Oklahoma relinquished the claim to her, the two-year time period began when Bank of Oklahoma became Trustee of the Bowers Trust. If Edwards' position were sustained then the result would be to add the period of limitations applicable to Edwards to that applicable to Bank of Oklahoma. "If one limitation can be added to another without limit, it would create an intolerable rule and promote a never ending right of action." *Aldridge*, 1930 OK 355 at ¶ 25, 144 Okla. 204, 291 P. at 93. Therefore, the judgment is affirmed.

¶ 28 AFFIRMED.

GOODMAN, P.J., and BARNES, J. (sitting by designation), concur.

---

wards subsequently became the claimant. Continuous and uninterrupted possession of disputed property, as required for adverse possession, could be achieved by tacking possession of pre-decessors to succeeding adverse occupants. *Cloer Land Co. v. Wright*, 1993 OK CIV APP 56, 858 P.2d 110.