2012 OK CIV APP 53

**MILL CREEK LUMBER & SUPPLY COMPANY, Plaintiff/Appellee,**

v.

**FIRST UNITED BANK AND TRUST COMPANY, Defendant/Appellant,**

and

Linda L. Williams; Unknown Occupants of 8209 S. Westway Road, Sapulpa, Oklahoma; and Country Investments, Inc., Defendants.

**No. 109,596.**

Court of Civil Appeals of Oklahoma, Division No. 4.

March 27, 2012.

Tracy W. Robinett, Charles R. Swartz, Robinett & Murphy, Tulsa, OK, for Plaintiff/Appellee.

Heather Burrage, Burrage Law Firm, Durant, OK, for Defendant/Appellant.

P. THOMAS THORNBRUGH, Judge.

¶ 1 First United Bank and Trust Company (Bank) appeals the judgment of the district court that a materialmen's lien perfected by

Mill Creek Lumber & Supply Company (Mill Creek) has priority over Bank's mortgages. We affirm the district court's decision.

## BACKGROUND

¶ 2 In September 2007, Donald and Linda Williams (the Williamses) executed a $135,000 construction mortgage, as husband and wife, in favor of Bank. The mortgage was to fund the purchase of a lot and construction of a residential home at 8209 S. Westway Road in Sapulpa, Oklahoma (the House), and was recorded on September 28, 2007.[1] Between November 13, 2007, and February 15, 2008, Mill Creek furnished construction material for use in the House. In February 2008, the Williamses refinanced the construction loan with a new mortgage recorded on February 28, 2008. The construction mortgage was then released. The February 2008 mortgage contained a certification by the Williamses that the property was "unencumbered, except for encumbrances of record."

¶ 3 On March 17, 2008, the Williamses added a second, "supplemental" mortgage to the property. In that mortgage, the Williamses again warranted that they held "good and marketable title of record . . . in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below . . ." (original capitalization omitted). This mortgage made no reference to a materialmen's lien. On May 15, 2008, Mill Creek recorded a materialmen's lien on the property in accordance with the materialmen's lien statute.

¶ 4 On July 10, 2008, Mill Creek filed a petition alleging that it had supplied materials for the construction of the House, and was still owed $17,350. Mill Creek sought *in personum* judgment against Linda Williams for this amount, and *in rem* judgment against the property.[2] A copy of the petition was sent to Bank as an interested party.

---

1. Bank's motion for summary judgment states that the construction mortgage was recorded on September 28, 2008, rather than 2007. This apparently is a scrivener's error.

2. The record does not explicitly state why Donald Williams was not sued. However, the invoices submitted to Donald Williams by Mill Creek have the word "deceased" next to Williams' name.

Bank responded, arguing that its mortgages had priority over Mill Creek's lien.[3]

¶ 5 Both parties eventually moved for summary judgment, Mill Creek arguing that its lien held priority pursuant to the materialmen's lien statute, and Bank arguing that its mortgage held priority pursuant to the Uniform Commercial Code (UCC), or pursuant to equitable subrogation. On May 24, 2011, the district court entered a journal entry that overruled Bank's motion and granted summary judgment to Mill Creek. Bank now appeals that decision.

## STANDARD OF REVIEW

¶ 6 Summary judgment is proper only when it appears that there is no substantial controversy as to any material fact and that one of the parties is entitled to judgment as a matter of law. *Jordan v. Jordan*, 2006 OK 88, ¶ 17, 151 P.3d 117, 121. We review a grant of summary judgment *de novo*. *Young v. Macy*, 2001 OK 4, ¶ 9, 21 P.3d 44, 47. *"De novo"* means no deference to the trial court's ruling. *Fisher v. Fisher*, 2007 OK CIV APP 103, ¶ 3, 171 P.3d 917, 919. The interpretation of a statute and its application is also a question of law, and is reviewed *de novo*. *State ex rel. Okla. Dep't of Health v. Robertson*, 2006 OK 99, ¶ 6, 152 P.3d 875, 877–78.

## ANALYSIS

¶ 7 The sole issue on appeal is whether the district court erred in its judgment that Mill Creek's materialmen's lien held a priority superior to Bank's mortgage. Bank argues that two principles of law render its mortgage superior in priority to Mill Creek's lien. The first is that § 1–9–334 of the UCC governing construction mortgages gives Bank priority. The second is that Bank was entitled to priority pursuant to the doctrine of equitable subrogation.

## I. THE UCC AND FIXTURE LIENS VERSES CONSTRUCTION MORTGAGES

■ ¶ 8 The Oklahoma UCC, at 12A O.S. 2011 § 1–9–334(h), states:

... Except as otherwise provided in subsections (e) and (f) of this section, **a security interest in fixtures is subordinate to a construction mortgage** if a record of the mortgage is recorded before the goods become fixtures and the goods become fixtures before the completion of the construction. **A mortgage has this priority to the same extent as a construction mortgage to the extent that it is given to refinance a construction mortgage.** (Emphasis added).

¶ 9 Bank argues that its construction mortgage was recorded before the materials supplied by Mill Creek became "fixtures" and the materials became fixtures before the completion of construction. It further argues that the mortgage refinanced the construction mortgage, and is entitled to the same priority. Therefore, Bank argues, Mill Creek's lien is "a security interest in fixtures [that] is subordinate to a construction mortgage."

¶ 10 Bank's interpretation of UCC § 1–9–334(h) clashes with the Oklahoma materialmen's lien statute. Title 42 O.S.2011 § 141 states that mechanics or materialmen's liens created pursuant to statute:

... shall be preferred to all other liens or encumbrances which may attach ... subsequent to the commencement of such building ...

¶ 11 We find no Oklahoma case holding that ordinary building materials incorporated into a structure are "fixtures" for the purpose of the UCC's priority rules. Case law from other jurisdictions on this question is equally sparce. However, adopting Bank's interpretation would render all items used in general construction to be "fixtures" for the purposes of UCC priority. This was clearly not the intent of UCC § 1–9–334(a) (emphasis added), which states:

(a) A security interest under this article may be created in goods that are fixtures

---

**3.** In its briefing, Bank focused on the question of the priority of its first mortgage, and apparently did not raise the issue of its second mortgage again. However, Mill Creek asked for judgment that both mortgages were inferior to its lien.

Because we find the legal status of the two mortgages to be identical for the purposes of this case, we will use the word "mortgage" to refer to both the February 28, 2008, and March 17, 2008, mortgages.

or may continue in goods that become fixtures. **A security interest does not exist under this article in ordinary building materials incorporated into an improvement on land.**

¶ 12 Section 1–9–334 specifically regulates security interests *created by fixture liens and construction mortgages.* Because a security interest may not be created in "ordinary building materials incorporated into an improvement on land," they are clearly not fixtures pursuant to § 1–9–334.

¶ 13 Further, the concept that building materials incorporated into an improvement are fixtures, and that any lien created thereby is subordinate to a mortgage filed after the materials are supplied, is incompatible with the lien statute, 42 O.S.2011 § 141. Section 141 states that the materialmen's lien **"shall be preferred to all other liens or encumbrances which may attach** to or upon such land, buildings or improvements or either of them **subsequent to the commencement of such building** ..." (emphasis added). Interpreting UCC § 1–9–334 as requiring that mortgages made *subsequent* to the incorporation of building materials be accorded the position of a construction mortgage against the materialmen's lien would render the language of § 141 meaningless. Therefore, we find that UCC § 1–9–334 does not grant priority to either Bank's February 2008 or March 2008 mortgage.

## II. EQUITABLE SUBROGATION AND MATERIALMEN'S LIENS

¶ 14 Bank also argues that, even if it is not statutorily given first priority by UCC § 1–9–334, it should receive priority pursuant to the doctrine of equitable subrogation. Bank's original construction mortgage attached before building began. A construction mortgage is usually obtained before materials are supplied, and historically holds statutory priority over a materialmen's lien. *See Local Fed. Sav. & Loan Ass'n v. Davidson & Case Lumber Co.,* 1952 OK 452, ¶¶ 57–58, 255 P.2d 248, 254. In the current case, however, a replacement mortgage was acquired, and the original construction mortgage was released subsequent to the commencement of building. Pursuant to § 141 of the lien statute, this second mortgage is inferior to Mill Creek's lien. However, Bank argues that equitable subrogation gives its second mortgage the same priority position as the construction mortgage.

### A. *The Principle of Equitable Subrogation*

¶ 15 Oklahoma case law embodies two general principles regarding equitable subrogation of liens. One is stated in *Mortgage Electronic Registration Systems, Inc. v. U.S. ex rel. Internal Revenue Service,* 2006 OK CIV APP 45, ¶ 15, 134 P.3d 913, 916. A lender who:

> [V]oluntarily loans money to mortgagor for the purpose of satisfying and canceling a prior mortgage, taking a new mortgage for his own security, cannot have the former mortgage revived and himself subrogated to the rights of the mortgagee thereon when he has failed to take an assignment of the prior mortgage, and has voluntarily paid and discharged the same record.

*Id.* (footnote omitted) (quoting *Southwest Title & Trust Co. v. Norman Lumber Co.,* 1968 OK 71, 441 P.2d 430, and citing *Citizens State Bank of Tulsa v. Pittsburg County Broad. Co.,* 1954 OK 51, 271 P.2d 725).

¶ 16 However, *Mortgage Electronic Registration Systems* also notes a second principle, at ¶ 18, 134 P.3d at 916. Quoting *Foster v. Whitenton,* 1923 OK 681, ¶ 2, 221 P. 52, 53, the Court states (emphasis added):

> [E]quity will reinstate a first mortgage lien in its original priority when the same has been released and a *new mortgage taken on the property upon the mortgagor's misrepresentation that no intervening lien exists, and when the release is executed in ignorance of the existence of such intervening lien....*

¶ 17 In this case, the record shows that the Williamses represented in their application for the later mortgages that the property was "unencumbered, except for encumbrances of record." However, assuming this qualifies as a misrepresentation,[4] the equita-

---

4. We do not decide this issue, or indicate any                decision of law on this issue. The matter is

ble subrogation principle is also applicable only when "the release is executed in ignorance of the existence of such intervening lien." If Bank knew or had constructive notice of Mill Creek's lien at the time it released the construction mortgage, it is not entitled to equitable subrogation.

¶ 18 The record indicates that Bank had no actual notice of Mill Creek's lien at the time it released the construction mortgage.[5] However, 42 O.S.2011 § 141 (emphasis added) states that:

compliance with the provisions of this act shall constitute *constructive notice* of the claimant's lien to all purchasers and encumbrancers of said property or any part thereof, *subsequent to the date of the furnishing of the first item of material* or the date of the performance of the first labor or the first use of the rental equipment on said land.

Therefore, if Mill Creek compiled with the lien statute, Bank is deemed to have notice of Mill Creek's lien from the date that material was first furnished.

### B. *Compliance with the Mechanics and Materialmen's Lien Statute*

¶ 19 Bank did not challenge Mill Creek's compliance with the lien statute. However, this being the appeal of a summary judgment, we will examine the question pursuant to *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, 743 P.2d 682 (approved for publication by Supreme Court). The materialmen's lien statute requires two acts of compliance to perfect a lien. The first is a "pre-lien notice." Title 42 O.S.2001 § 142.6(B)(1) requires that:

Prior to the filing of a lien statement pursuant to Section 143.1 of [this Title], but no later than seventy-five (75) days after the last date of supply of material, services, labor, or equipment in which the claimant is entitled or may be entitled to lien rights, the claimant shall send to the last-known address of the original contractor and own-

er of the property a pre-lien notice pursuant to the provisions of this section.

However, this pre-lien notice requirement does not apply to a claimant:

a. whose claim relates to the supply of material, services, labor, or equipment furnished in connection with a residential project. For the purposes of this subparagraph, the term "residential" shall mean a single family or multifamily project of four or fewer dwelling units....

42 O.S.2001 § 142.6(B)(3).

¶ 20 In the current case, the project involved a single family house, and there is no record that the Williamses ever occupied the house. Therefore, a pre-lien notice was not required.

The second lien requirement is stated by 42 O.S.2001 § 142:

Any person claiming a lien as aforesaid shall file in the office of the county clerk of the county in which the land is situated a statement setting forth the amount claimed and the items thereof as nearly as practicable, the names of the owner, the contractor, the claimant, and a legal description of the property subject to the lien, verified by affidavit. Such statement shall be filed within four (4) months after the date upon which material or equipment used on said land was last furnished or labor last performed under contract as aforesaid;

The record shows that Mill Creek last supplied materials around February 15, 2008, and filed its lien on May 15, 2008, one month before the statutory deadline. Therefore, we find that Mill Creek properly complied with the provisions of the materialmen's lien statutes, and Bank is charged with constructive knowledge of Mill Creek's lien.

---

raised only to show that IF there was a misrepresentation, that alone is insufficient to invoke equitable subrogation.

5. However, it seems self-evident that any Bank regularly involved in providing construction mortgages would understand that material had been used, and possibly not paid for, in the time period between the construction mortgage and the replacement mortgage.

### C. *The Gap Between Supplying Goods and Filing the Lien*

¶ 21 We find it clear that Bank is charged with knowledge of Mill Creek's lien after it complied with the filing requirement. However, Bank released the construction mortgage after Mill Creek supplied materials, but before its lien was filed. The remaining question is whether Bank is retroactively charged with knowledge from the date Mill Creek began to supply materials, or only from the date Mill Creek filed its lien.

¶ 22 Section 141 of the lien statute provides the answer. The statute provides that the constructive notice occurs "subsequent to the date of the furnishing of the first item of material or the date of the performance of the first labor or the first use of the rental equipment on said land." The statute is unambiguous that, if a lien is properly filed within four months of the last provision of materials, notice is deemed to have occurred from the date materials were first supplied. Therefore, Bank released the construction mortgage with constructive knowledge of Mill Creek's lien.

### D. *Equity, and the Purpose of Materialmen's Liens*

¶ 23 Finally, we note that this interpretation of the lien statute is consistent with the evident legislative intent. The purpose of the statute is to encourage vendors to provide materials and services without immediate payment by allowing vendors the protection of a priority lien with minimal formalities. The statute clearly contemplates that, if vendors remain unpaid when the construction mortgage is released, a materialmen's lien will be in force and will act as an obstruction to any new mortgage until the vendors are paid. To allow the doctrine of equitable subrogation to evade this intent, or to provide a window between the provision of materials and the filing of a lien in which a Bank may take a new priority mortgage, undermines this statutory purpose. Finally, the issue is an equitable one, and, even assuming the equitable subrogation principle is available to Bank under these circumstances, we find that the district court did not err in ruling that the equities favored Mill Creek in this matter.

### CONCLUSION

¶ 24 We find no error in the district court's decision that Mill Creek's lien occupies a superior position to the Bank's mortgages. Therefore, we affirm.

¶ 25 AFFIRMED.

GOODMAN, P.J., and RAPP, J., concur.